11 B.R. 97 (1981)
In re A.E.I. CORPORATION, Debtor.
The UNITED STATES of America on Behalf of its Agency the SMALL BUSINESS ADMINISTRATION, Plaintiff,
v.
Karl E. FRIEND, Trustee, Defendants.
Bankruptcy No. 80-00370T, Adv. No. 80-0379.
United States Bankruptcy Court, E.D. Pennsylvania.
May 20, 1981.
*98 Richard J. Stout, Philadelphia, Pa., for plaintiff.
Karl E. Friend, Allentown, Pa., Trustee, defendant.
Rosetta B. Packer, Allentown, for trustee.

OPINION
THOMAS M. TWARDOWSKI, Bankruptcy Judge.
The Small Business Administration [hereinafter referred to as SBA], a secured creditor of the debtor, has filed a complaint to *99 modify the stay pursuant to 11 U.S.C. § 362 (1979). Two issues have been presented to the Court for resolution: first, whether the SBA should be subject to the equitable doctrine of marshaling of assets, and first satisfy its security interest from the assets pledged as personal guarantees of officers of the corporation before reclaiming corporate assets; second, whether the SBA is entitled to certain rents received from the lease by the trustee of a piece of machinery subject to the SBA's security interest.
For reasons hereinafter given, we conclude: first, that the doctrine of marshaling of assets does not require that the SBA first pursue non-corporate assets; second, that the SBA is not entitled to any rent from the lease of the debtor's machinery.[1]
This case originated as an involuntary petition under Chapter 11 of the Bankruptcy Code. A trustee was appointed concurrently with the entry of the order for relief. The SBA was the major secured creditor of the debtor corporation by virtue of a loan of $125,000, evidenced by a promissory note executed by the officers of the debtor. Collateral for the loan consisted of a security interest in all the debtor's machinery and equipment, furniture, fixtures, inventory, and accounts receivable, existing and thereafter acquired.
I. MARSHALING OF ASSETS
In addition to the security interest in the debtor's machinery, equipment, and other assets, the SBA obtained the personal guarantees of the president and secretary of the debtor corporation, Virginia and Jack D. Smith, respectively. The SBA filed a complaint for relief from the automatic stay in order to reclaim the collateral encumbered by its security interest. The trustee interposed, by way of its answer, the specific defense of marshaling of assets. Essentially, the trustee's argument is that the SBA, as senior lienor, should first be required to satisfy its debt from the personal guarantees of the officers of the debtor, thus making some of the corporate assets available for the unsecured creditors. Assuming that the trustee's status under 11 U.S.C. § 544(a) (1979) of the Bankruptcy Code[2] grants him standing to request marshaling where no other lien creditor exists, we find that in this case, the equitable doctrine of marshaling of assets is not applicable.
The doctrine of marshaling assets is an equitable principle upon which the legal rights of creditors are controlled in order to accomplish an equitable distribution of funds in accordance with the relative priorities of different parties entitled to share therein. The doctrine springs from the principle that a senior lienor who is entitled to satisfaction of his demand from either of two funds, shall not be permitted to exercise his election so as to deny satisfaction to a junior lienor of one fund only. Meyer v. United States, 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963).
Generally, three elements must be present in order for a court of equity to invoke the marshaling doctrine: 1) the existence of two creditors with a common debtor; 2) the existence of two funds belonging to the debtor; 3) the legal right of one creditor to satisfy his demand from either or both of the funds, while the other may resort to only one fund. Farmers & Mechanics Bank v. Gibson, 7 B.R. 437 (Bkrtcy.N.D.Fla.1980); 53 Am.Jur.2d Marshaling Assets § 7 (1970).
*100 Trustee cites the case of Farmers & Mechanics Bank v. Gibson, 7 B.R. 437 (Bkrtcy. N.D.Fla.1980) in support of his position. That case is very similar to the case at bar in that an officer and sole shareholder of the debtor corporation offered his personal guaranty as an inducement to the Bank to grant a loan to the debtor. In Gibson, the court granted the requested marshaling, treating the pledge of personal assets as a contribution to capital thus satisfying the requirement that there exist two funds belonging to the common debtor. The court based its decision on the equitable nature of both marshaling and the shareholders' right to limited liability, and concluded that, in equity, the officer/shareholder was deemed to have pledged his personal assets as corporate assets.
Similarly, in In re Jack Green's Fashions, 547 F.2d 130 (8th Cir. 1979), the personal property of two partners was subjected to marshaling where the court concluded that the partners had pledged their property as if it had been partnership assets. Again, the court grounded its decision on the equitable notion that marshaling would permit the junior creditors to share in the debtor's assets.
In the instant case, however, we conclude that nothing in the record compels this court to treat the guarantees of the Smiths as a contribution to capital of the debtor corporation. Nor does the record reveal that the Smiths managed their property and the corporate property as if it were the same. By its terms, the guaranty given by the Smiths was intended by the parties to create a form of secondary liability, and the subsequent filing of a corporate bankruptcy petition did not alter the nature of that secondary liability.
We decline to invoke the marshaling doctrine in this case because of the absence of one of the three requisite elements discussed above, namely, that there must exist two funds belonging to a common debtor. The Smiths and the debtor corporation are separate entities, and we find that the personal assets of the Smiths and the corporate assets of the debtor are of separate and distinguishable ownership. See also, Port Welcome Cruises, Inc., v. S.S. Bay Belle, 215 F.Supp. 71 (D.Md.1963).
Since we find that the Smiths' guarantees created merely a secondary liability, marshaling would not enhance the trustee's position. As guarantors of the corporation, the Smiths would be subrogated to the rights of the SBA, thus defeating the trustee's hoped-for advantage. In re Ciccantelli, Bankr. No. 29881. (E.D.Pa. Aug. 30, 1968).
II. SECURITY INTEREST IN RENTS
Shortly after entry of the order for relief and the concurrent appointment of the trustee, the trustee applied for authority to enter into a lease of personal property of the debtor, specifically, a filling and membraning machine. The SBA entered objections to the application. A hearing was held, whereupon the objections were withdrawn pursuant to an order which placed the payments under the lease in escrow pending the further order of the court. The SBA alleges that its security interest in the machinery, equipment, fixtures and other personal property of the debtor extended to the rental payments from the lease of the collateral, as proceeds thereof. The trustee answered, admitting that the SBA's security interest extended to proceeds of the collateral, but specifically denying that rental payments constitute proceeds.
11 U.S.C. § 552(b) (1979)[3] provides for an exception to the general rule that pre-petition *101 security interests do not extend to property acquired by the debtor after filing of the petition. The section provides that a pre-petition security interest in proceeds, product, offspring, rents or profits of the secured property will continue post-petition, to the extent provided by the security agreement and applicable nonbankruptcy law. It must be noted, however, that Section 552(b) is subject to the provisions of 11 U.S.C. § 363 (1979), which grants to the trustee the conditional power to use, sell, or lease property of the estate.[4]
The argument proffered by the SBA fails by virtue of the very provisions of the law it seeks to invoke. First, the terms of the security agreement expressly limit the security interest to the named collateral and "proceeds and products therefrom." Nowhere does it appear that the parties intended that rents from the lease of such collateral, either pre- or post-petition, were to be covered by the security agreement. Applicable nonbankruptcy law defines proceeds as "whatever is received when collateral is sold, exchanged, collected, or otherwise disposed of." 13 Pa.Cons.Stat.Ann. § 9306 (Purdon).
The SBA cites the case of Feldman v. Philadelphia National Bank, 408 F.Supp. 24 (E.D.Pa.1976) in support of its position. In that case a secured creditor sought and received rental payments made pursuant to a lease of collateral in which the creditor held a security interest. That case, however, is distinguishable from the case at bar. In Feldman, the secured party's security interest extended specifically to the lease of, and other contract rights in, the collateral. The secured party took possession of the lease document in order to perfect its interest. The court reasoned that a perfected security interest in a lease and its proceeds included the rental payments as proceeds of the lease. Here the security interest extends only to the named collateral, and not to the contract rights or chattel paper arising out of the lease of the collateral.[5]
More persuasive, however, is In re Cleary Brothers Construction Co., 30 UCC Rep. 1444 (S.D.Fla.1980), an almost identical factual situation to the case at bar. There, a bankruptcy court determined that in the absence of a security interest taken specifically in a lease, the term "proceeds" refers to collateral which has been finally or permanently converted into another form; however, where there exists a security interest in a lease, proceeds will include rental payments as "the account arising when the right to payment is earned under a contract right." Cleary Bros., at 1445 (citing U.C.C. § 9-306.) The court distinguished Feldman on the same basis as we do today, that is, proceeds do not include rental payments when the security interest does not cover the lease of the collateral.
We, therefore, do not reach the question of whether the trustee, under Sections 363 and 552(b) would prevail against the SBA based upon the equities of the case. Although Congress has addressed that problem in those sections,[6] we conclude that the *102 parties to the underlying security agreement did not intend to include therein, rental payments from the lease of the collateral in question. Hence, the trustee's right in this case to lease the machine is in no way limited by the provisions of Section 552(b).
NOTES
[1] This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.
[2] Section 544(a) of the Bankruptcy Code provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by 
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists; ...
[3] Section 552(b) of the Bankruptcy Code provides:

(b) Except as provided in sections 363, 506(c), 544, 545, 547, and 548 of this title, if the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.
[4] Section 363(b) of the Bankruptcy Code provides:

(b) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.
[5] On the face of the security agreement executed by the officers of the debtor appears a checklist of various categories of collateral. A checkmark is to be placed in the box aside each type of collateral covered by the agreement. We note that the box referring to "All contract rights now in force or hereafter acquired" is not checked. Nor does there appear any box marked "Chattel paper arising out of the lease of the collateral" or any similar language.

The Pennsylvania law of secured transactions defines chattel paper as "[a] writing or writings which evidence both a monetary obligation and a security interest in or lease of specific goods...." 13 Pa.Cons.Stat.Ann. § 9105 (Purdon).
[6] Although the section grants a secured party a security interest in proceeds, product, offspring, rents, or profits, the section is explicitly subject to other sections of title 11. For example, the trustee or debtor in possession may use, sell, or lease proceeds, product, offspring, rents, or profits under section 363. 124 Cong. Rec. H 11,097-11,098 (Sept. 28, 1978); S 17,414 (Oct. 6, 1978).