In re UNITED MEDICAL RESEARCH, INC., Bankrupt.

Jon R. STUHLEY, Trustee, Plaintiff,

v.

UNITED STATES SMALL BUSINESS ADMINISTRATION, etc., et al., Defendants.

Bankruptcy No. BK 79–02279.
Adv. No. Q.

United States Bankruptcy Court, C. D. California.

Aug. 6, 1981.

Alberts & Minier, Santa Ana, Cal., for Jon R. Stuhley, plaintiff.

Hugh W. Blanchard, Asst. U. S. Atty., Los Angeles, Cal., for U. S. Small Business Administration, defendant.

Richard J. Sunday, Fullerton, Cal., for defendants Peter Bonin, Sr., Jean F. Bonin, Pete J. Bonin, Jr., Nancy Bonin, Marion Evans, Sr., and Marion E. Evans.

## MEMORANDUM OF DECISION

PETER M. ELLIOTT, Bankruptcy Judge.

This proceeding was tried and submitted for decision on July 15, 1981.

The issue presented is whether the trustee of the bankrupt corporation is entitled to an order marshaling the assets of the personal guarantors of the United Medical Research ("UMR") indebtedness to the Small Business Administration ("SBA") and requiring the SBA to first foreclose upon the properties pledged by the guarantors before seeking satisfaction out of the corporate assets.

On or about January 19, 1977 UMR borrowed $350,000.00 from Tokai Bank. This loan was guaranteed by the SBA. Said indebtedness was secured by, among other things, a security interest in all or virtually all of UMR's assets. UMR's indebtedness to Tokai Bank and the payment thereof was personally guaranteed by the six guarantors, Peter J. Bonin, Sr. and his wife, Jean F. Bonin, Pete J. Bonin, Jr. and his wife, Nancy Bonin, and Marion Evans, Sr. and his wife, Marion E. Evans. The personal guarantee of each of the three couples was secured by duly recorded deeds of trust on three parcels of real property; each parcel

owned by one of the three couples. At or about the time the loan was made to UMR, Peter Bonin, Sr. was an officer and director of UMR and owned approximately 41% of the capital stock. At that time, Pete Bonin, Jr. was a director of the corporation and owned approximately 20% of the stock. At the same time, Evans was an officer and director of the corporation and owned approximately 20% of the capital stock.

On or about March 15, 1979 UMR filed a Chapter XI petition in this court. UMR was adjudged to be a bankrupt on or about August 2, 1979. After the filing of the Chapter XI, but before the adjudication in bankruptcy, Tokai Bank's loan and all security was assigned by Tokai to the SBA together with assignments of the personal guarantees of the six guarantors together with assignments of the deeds of trust securing the guarantees. The SBA is now the legal owner of a claim against UMR and the guarantors and all of the collateral.

On February 8, 1980 the SBA filed a secured claim in the amount of $356,612.58.

■ The trustee has administered the bulk of the assets and has on hand approximately $132,000.00; substantially all of this money is subject to the SBA lien. Approximately 140 creditors have filed claims which in the aggregate total approximately $280,000.00. In addition, taxing agencies entitled to priority under the Bankruptcy Act have filed claims totalling approximately $68,000.00. Unless this court orders marshaling, and requires the senior lien creditor, the SBA to first seek satisfaction from assets which the junior creditors (represented by the trustee) cannot reach, to wit, the guarantors' collateral, then the SBA's claim would exhaust this estate and there would be no fund for UMR's unsecured creditors. But in order for the doctrine of marshaling to apply, as a general rule, both funds must be in the hands of a common debtor of both senior and junior creditors. Here the $132,000.00 proceeds of UMR's assets are in the hands of the trustee but the other "fund", the Evans' and Bonins' real estate is in other hands.

To circumvent this general rule, the trustee relies primarily upon two cases. The first case is *In re Jack Green's Fashions for Men—Big and Tall, Inc., Bankrupt,—Berman, Trustee v. Green, et al.,* (CA 8th, 1979) 597 F.2d 130.

In that case, John F. Green and John F. B. Green were co-partners doing business as Jack Green's Fashions for Men. When the partnership borrowed money from the bank secured by liens on both the business assets and also upon the partners' personal residences. Thereafter the partnership was incorporated and took over all of the assets and assumed all liabilities including the bank loan. The corporation filed a bankruptcy and John F. Green and John F. B. Green also filed personal bankruptcies.

After stating that if the bank were permitted to satisfy its indebtedness first out of the assets of the corporation that corporation creditors would receive nothing, the court decided that equity required that the individual's assets be marshaled for the benefit of the corporate creditors.

The court's opinion states that partnership law is not controlling although the liability of the individuals was first incurred in their individual capacity as partners. What would have been the result had the court applied partnership law?

The doctrine of marshaling of assets is the basis for the Uniform Partnership Act provisions stating that when partnership property and the individual properties of the partners are in possession of a court for distribution, the partnership creditors are entitled to priority on partnership property and separate creditors are entitled to priority on individual property. Similarly, the Act provides that where a partner becomes bankrupt, his separate creditors have priority over partnership creditors.[1] In fact, it has been said that the Uniform Partnership Act provisions are basically a codification of the doctrine of marshaling assets. 60 Am.Jur.2d 199

---

1. See § 5(g) of the Bankruptcy Act and 1A *Collier on Bankruptcy* (14th Ed.) ¶ 5.26.

Perhaps because *Jack Green's Fashions for Men* was incorporated, the court applied the law as to corporations?

Inasmuch as a corporation is an entity distinct from its stockholders, as between a junior creditor of the corporation and a senior creditor who can also resort to the stockholders the necessary condition of a common debtor does not exist.

53 Am.Jur.2d 16

■ If a partner or a stockholder is guilty of inequitable conduct, courts may marshal the partner or stockholder's individual property for the benefit of creditors of the partnership or corporation. However, as stated in 53 Am.Jur.2d 15,

In the absence of independent and separate equities, the doctrine of marshaling assets does not apply unless the litigants are creditors of the same debtor and both funds are in the hands of a common debtor of both creditors.

It is not clear from the opinion what independent and separate equity existed to persuade the court to marshal the assets of John F. Green and John F. B. Green for corporate creditors. Also, the court did not discuss the rights of the individual creditors of John F. Green and John F. B. Green. Where is the equity in diluting or completely wiping out any possible dividend to their individual creditors for the benefit of business creditors?

The second case relied upon is *Farmers & Merchants Bank v. Gibson, Trustee* (Fla. Bkrtcy.1980) 7 B.R. 437, a decision of Bankruptcy Judge Sauls of the Northern District of Florida. In that case, the bank held a mortgage on the corporate debtor's real estate to secure a working capital loan. That loan was guaranteed by the president and his wife who were also principal shareholders of the debtor corporation and their guarantee was secured by a mortgage on certain personal real estate owned by the president and his wife. Citing *Jack Green's Fashions for Men*, among other cases, trustee Gibson asserted that the bank should be required to marshal on the grounds that the creditors of the corporation had no rights in the collateral which was security for the guarantee to the bank and that it would be inequitable to allow the bank to satisfy its lien out of the corporate assets leaving nothing for unsecured creditors of the corporation.

Judge Sauls discusses the principles of marshaling in his thorough and scholarly opinion. He states the general rule involving corporate indebtedness guaranteed by stockholders that normally a stockholder has no liability to any of the creditors other than his initial contribution to capital. He goes on to state the exception to the rule that if the corporate veil is pierced in equity, the corporate creditors have an equitable right that the stockholder's personal assets be marshaled. Having stated the general rule, it seems to me that Judge Sauls' judgment in favor of the trustee was based upon a non-sequitur. Without finding that the corporate president or his wife were guilty of any inequitable conduct that would justify piercing the corporate veil, Judge Sauls concluded, at Page 442, that equity required marshaling because the visable result of obtaining a working capital loan by pledging personal assets, including personal exempt assets,

. . . is the likely inducement of others to innocently commence or continue to extend supplies or services to the principal on credit.

■ It is poor policy for courts to upset legitimate business transactions because of some vague concept of equity. We tend to forget that these decisions affect future commercial transactions. Advantageous and proper loans to corporations may be frustrated because shareholders would be fearful of having their personal assets marshaled for corporate creditors should they guarantee a corporate debt. As stated by the court in *Rowan v. United States* (CA 5th 1955), 219 F.2d 51 at 54, in connection with a taxation problem,

No stockholder could safely advance money to strengthen the faltering steps of his corporation (which, of course, may be greatly to the benefit of other creditors) if he is faced with the danger of having the Commissioner, with the backing of

the courts, say 'he has no right to launch a corporate business without investing in it all the money it needed, and investing it in the way that is most disadvantageous to himself, both as relates to taxation and as to other creditors.'

Unsecured creditors often receive nothing in a bankruptcy liquidation. Rarely, the unsecured creditors do receive a small dividend. It is not surprising that bankruptcy judges and the appellate courts are tempted to "do equity" for the unsecured creditors. However, as stated in the *Matter of Samuels & Co., Inc.* (CA 5th 1976) 526 F.2d 1238,

We do not sit as federal chancellors confecting ways to escape the state law of commercial transactions when that law produces a result not to our tastes. Doing what seems fair is heady stuff . . . Today's heady draught may give the majority a euphoric feeling, but it can produce tomorrow's hangover.

There has been no showing that the Bonins, senior or junior and their wives or Mr. and Mrs. Evans have been guilty of fraud, overreaching or other inequitable conduct.

In *Frasher v. Robinson*, (CA 9th 1972) 458 F.2d 492, the Ninth Circuit held:

Claims of majority shareholders will be subordinated when the majority shareholders have been involved in fraud, overreaching, or other inequitable conduct. *Pepper v. Litton*, 308 U.S. 295, . . . However, absent inequitable conduct, *bona fide* claims based upon loans from majority shareholders will not be subordinated to the claims of other creditors.

On principle there is no difference between a stockholder loan to a corporation and that stockholder loaning his credit to the corporation by securing his guarantee of a corporate debt with individual assets.

This is not an appropriate case for the doctrine of marshaling. Therefore, the trustee's complaint should be dismissed.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within memorandum of decision shall constitute my findings of fact and conclusions of law.