In the Matter of HARROLD'S HATCHERY AND POULTRY FARMS, INC., a/k/a Harrold's Hatchery, Inc. and Harrold's Poultry Farm, Inc., Debtor.

James E. McDONALD, Jr., Trustee, Plaintiff,

v.

The FIRST NATIONAL BANK OF ATHENS, Defendant,

and

Thomas J. Harrold, Intervenor Defendant.

Bankruptcy No. 80–00113–Ath.

Adv. No. 81–3038.

United States Bankruptcy Court, M. D. Georgia, Athens Division.

Feb. 17, 1982.

---

James E. McDonald, Jr., trustee pro se Turnage, Leavell & McDonald, Athens, Ga., for trustee.

Thomas A. Nash, Jr., Fortson, Bentley & Griffin, Athens, Ga., for First National Bank of Athens.

Jeffrey P. Marston, Cofer, Beauchamp, Hawes & Brown, Atlanta, Ga., for Thomas J. Harrold.

## MEMORANDUM DECISION ON TRUSTEE'S REQUEST TO MARSHAL ASSETS

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

### STATEMENT OF THE CASE

On September 19, 1980, Harrold's Hatchery and Poultry Farms, Inc. (Debtor) filed its voluntary petition under Chapter 11 of Title 11 of the United States Code. On December 19, 1980, the Debtor filed its conversion to Chapter 7 of Title 11, and James E. McDonald, Jr. (Trustee) was appointed trustee of the bankruptcy estate. The order of conversion was signed by this Court on January 5, 1981. The matter before the Court is an adversary proceeding brought by the Trustee to require The First National Bank of Athens, Athens, Georgia (First National Bank) to marshal certain assets which it has as security for the obligation of the Debtor. The First National Bank filed its response to the Trustee's adversary proceeding on August 10, 1981, and by way of counterclaim, seeks an abandonment by the Trustee of a certain bank account and an accounting as to certain other assets. The Trustee filed a timely response to the counterclaim.

On August 17, 1981, Thomas J. Harrold filed his motion to intervene in this adversary proceeding, and on August 19, 1981, by consent of all parties, Mr. Harrold was added as a party defendant. The parties have requested that the Court rule first on the Trustee's request for marshaling before hearing evidence on the counterclaim of the First National Bank. The Court has agreed to this request based on counsel's statement that a ruling on this threshold issue will greatly aid in giving the Debtor's bankruptcy proceeding proper direction.

After considering the evidence and briefs of counsel, the Court has this day entered an order denying the Trustee's request for marshaling. The order further schedules a status conference at which all counsel are directed to appear. In support of its order, the Court attaches the following findings of fact and conclusions of law. To the extent

any findings of fact constitute conclusions of law or any conclusions of law constitute findings of fact, they are so adopted.

## FINDINGS OF FACT

On September 12, 1979, the board of directors of the Debtor authorized the Debtor to borrow $276,158.14 from the First National Bank, and on that same date, Mr. Harrold, as president of the Debtor, pursuant to the authorization, executed a loan agreement on behalf of the Debtor with the First National Bank. This loan to the Debtor was secured by a security interest in all the Debtor's farm equipment, hatchery equipment, and inventory. As a part of the transaction, Mr. Harrold, in his individual capacity, executed a "Guaranty" agreement on September 14, 1979. In pertinent part, this agreement states:

FOR VALUE RECEIVED ... the undersigned hereby unconditionally guarantee(s) the full and prompt payment when due, whether by declaration or otherwise, and at all times hereafter, of all obligations of the Debtor [Harrold's Hatchery and Poultry Farm, Inc.] to the Bank, however and whenever incurred or evidenced, whether direct or indirect, absolute or contingent, or due or to become due (collectively called "Liabilities"), and the undersigned further agree(s) to pay all expenses (including attorneys' fees) paid or incurred by the Bank in endeavoring to collect the Liabilities, or any part thereof, and in enforcing this guaranty. . . .

. . . .

Bank may, without demand or notice of any kind, at any time when any amount shall be due and payable hereunder by any of the undersigned, appropriate and apply toward the payment of such amount, and in such order of application as the Bank may from time to time elect, any property, balances, credits, deposits, accounts, items or monies of such undersigned in the possession or control of the Bank for any purpose.

. . . .

The Bank may ... (f) resort to the undersigned (or any of them) for payment of any of the Liabilities, whether or not the Bank shall have resorted to any property securing any of the Liabilities or any obligation hereunder or shall have proceeded against any other of the undersigned or any other party primarily or secondarily liable on any of the Liabilities.

. . . .

The undersigned hereby expressly waive(s): (a) Notice of the acceptance of this guaranty, (b) notice of the existence or creation of all or any of the Liabilities, (c) presentment, demand, notice of dishonor, protest, and all other notices whatsoever, and (d) all diligence in collection or protection of or realization upon the Liabilities or any thereof, any obligation hereunder, or any security for any of the foregoing.

To secure this individual guarantee, on September 14, 1979, Mr. Harrold executed a security deed in favor of the First National Bank, which deed conveyed a security interest in five tracts of real estate (one of which was Mr. Harrold's principal residence) to the First National Bank. The security deed shows a consideration of $276,158.14 but does not refer to the First National Bank's loan to the Debtor. The security deed does indicate that it is subject to a security deed in favor of the Federal Land Bank of Columbus.

As another part of the transaction, Mr. Harrold executed, on September 14, 1979, a document entitled "Pledge of Collateral." This document is signed by Mr. Harrold in his individual capacity and states in pertinent part:

TO: THE FIRST NATIONAL BANK OF ATHENS

In order to induce you to make and/or extend a loan or loans to *Harrolds Hatchery & Poultry Farm, Inc.* (hereinafter referred to as borrower), the undersigned hereby authorizes said Borrower to pledge to you, at any time, nor [sic] or hereafter, as collateral security for the payment and performance of each and

every obligation and liability, direct or contingent, of the borrower to you, due or to become due, whether now existing or hereafter arising, the following property belonging to me:

Real estate located in Clarke and Oglethorpe Counties described in Security Deed dated September 14, 1979.

And the undersigned expressly ratifies, consents to and adopts any and all agreements which the Borrower has made, or may hereafter make, with you regarding the use of said collateral, and the undersigned authorizes you to deliver all such collateral to the Borrower or to make such disposition of it and/or proceeds thereof as the Borrower may instruct, and the undersigned agrees that any and all such agreements and instructions of the Borrower shall be applicable to such collateral exactly as if such collateral were owned by the Borrower, and the undersigned shall not be subrogated to your rights in any other collateral pledged by the Borrower and/or proceeds thereof.

The undersigned hereby waives any and all notices of every kind to which the undersigned might otherwise be entitled, either of the acceptance hereby by you, or of the incurring of any obligation of liability by the Borrower, or of the demand for payment of the payment of all or any obligations of liabilities of the Borrower to you, whether now existing or hereafter arising, or of the presentment of any instrument for the payment of money at any time now or hereafter held by you in connection with any obligation or liability of the Borrower, or of protest and/or non-payment [sic] thereof, or of any exchange, sale, release or other handling or disposition of all or any such collateral, or otherwise.

The security deed was properly recorded of record, as required by the laws of the State of Georgia, and the First National Bank filed the required financing statement to perfect its security interest in the inven-

tory and equipment of the Debtor. Three subsequent loans were made by the First National Bank to the Debtor. On May 12, 1980, $90,000.00 was loaned; on June 10, 1980, $40,000.00 was loaned; and on June 26, 1980, another $40,000.00 was loaned. Mr. Harrold executed separate personal guaranties on these additional loans, but no additional collateral was taken by the First National Bank.[1]

The Debtor filed its initial petition under Chapter 11 of the Bankruptcy Code in this Court on September 19, 1980.

The Debtor's schedules show Mr. Harrold to own ten shares of the Debtor's 400 issued shares.

## CONCLUSIONS OF LAW AND DISCUSSION

The question presented to the Court is whether upon the facts in this case, the Court should order the First National Bank to marshal the assets upon which it holds a security interest. The First National Bank has a security interest in the Debtor's farm equipment, hatchery equipment, and inventory, and in addition, it has the personal guarantee of Mr. Harrold. To secure his personal guarantee, Mr. Harrold has pledged five tracts of real estate to the First National Bank. The First National Bank thus holds a security interest in property of the Debtor and in property of Mr. Harrold, all of which it is entitled to liquidate in order to satisfy the Debtor's indebtedness to it.

■ This Court, sitting as a court of equity, may order marshaling in appropriate cases. *Second National Bank of Houston v. Phillips*, 189 F.2d 115 (5th Cir. 1951). Marshaling is an equitable doctrine which allows this Court, as a court of equity, to arrange assets or claims so as to secure the proper application of the assets to the various claims and to allow all parties having equities therein to receive their due proportion. It is designed to protect junior lienholders from the destruction of their inter-

1. The property that secured these three loans was the same as for the $276,158.14, September-

ber, 1979 loan, except for fluctuations in the amount of equipment and inventory.

ests by the arbitrary application of collateral to the indebtedness of a senior lienholder. *Meyer v. United States*, 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963). The United States Court of Appeals for the Fifth Circuit has stated:

> The doctrine of marshaling assets applies only to the case of a junior lien holder [sic], who seeks to compel a senior lien holder [sic] to exhaust security, which the senior has, and which the junior has not access to, and only in cases of a *common debtor to two creditors* for the protection of the junior creditor.

*Sowell v. Federal Reserve Bank*, 294 F. 798, 801 (5th Cir.), aff'd 268 U.S. 449, 45 S.Ct. 528, 69 L.Ed. 1041 (1923) (emphasis added).

The Trustee in seeking marshaling in this case, relies almost entirely upon the case of *Farmers & Merchants Bank v. Gibson*, 7 B.R. 437 (Bkrtcy.N.D.Fla.1980), in which case is found the following discussion of the doctrine of marshaling:

> The doctrine of marshaling assets is an equitable principle upon which the legal rights of creditors are controlled in order to accomplish an equitable distribution of funds in accordance with the superior equities of different parties entitled to share therein. The equitable doctrine of marshaling rests upon the principle that a creditor having two funds to satisfy his debt may not by his application of them to his demand defeat another creditor who can resort to only one of the funds. It springs from the principle that a lienor or encumbrancer who is entitled to satisfaction of his demand of either of two funds, called the paramount or senior creditor, shall not so exercise his election as to exclude a party who is entitled to resort to only one of the funds, called the junior creditor. The equity of marshaling may be enforced either by injunction against the paramount creditor, or by subrogation in favor of the junior creditor. Whitney, The Law of Modern Commercial Practices (2d ed. 1965).

[4] In the absence of independent and separate equities, the doctrine of marshaling does not apply unless the litigants are (1) creditors of the same debtor and (2) the funds are assets [the rights to which are sought to be controlled by marshaling] in the hands of and owned by such common debtor. *Moser Paper Co. v. North Shore Publishing Co.* [83 Wis.2d 852, 266 N.W.2d 411], supra. 53 Am. Jur.2d, Marshaling Assets, § 9.

*Id.* at 439.

 With the foregoing discussion in mind, the Court will now turn to consider the facts before it to see if marshaling should be applied. The Trustee contends that the First National Bank should first look to the assets of Mr. Harrold for satisfaction of the Debtor's debt before looking to the Debtor's assets. The First National Bank has two sources to which it can look for satisfaction, one being the assets of the Debtor and the other being the five tracts of real estate personally pledged by Mr. Harrold. It is well accepted that marshaling is only proper when the assets sought to be marshaled are assets owned by a common debtor. *In re Beacon Distributors, Inc.*, 441 F.2d 547 (1st Cir. 1971); *Sowell*, supra. The common debtor in this case is the Debtor,[2] and marshaling would be proper as to all of the Debtor's assets. The Trustee would have this Court marshal the assets of Mr. Harrold with the Debtor's assets, but to do so would violate the requirement that the assets sought to be marshaled must be in the hands of or owned by a common debtor.

The Trustee argues that the common debtor requirement for marshaling should not bar this Court from applying marshaling in this case, and in support of this contention, he cites the Court to the *Gibson* case. In the *Gibson* case, the Court found that it could require marshaling when the common debtor requirement was not met in two particular instances, (1) when the corporate veil could properly be pierced, or (2)

---

**2.** The First National Bank has a claim against the Debtor, and the Trustee, as a judgment lien creditor, would have a claim against the Debt-

or. Mr. Harrold has also asserted a claim against the Debtor, but this is disputed. Still, the one common debtor is the "Debtor."

when a shareholder's property should be deemed to be a contribution to the capital of a corporation. Whether this Court agrees with the holding of the *Gibson* case need not be decided because the Trustee has failed to show that either of the *Gibson* instances are present in this case. The Trustee has made no showing at all that the corporate veil of the Debtor should be pierced. The Trustee does argue that Mr. Harrold's assets should be treated as a contribution to capital, but the Trustee has presented no facts upon which the Court could make such a ruling. The Trustee has not made a sufficient showing for this Court to find that Mr. Harrold's assets, which he pledged as security for this personal guarantee, are anything but his individual assets. There is no showing that the Debtor was undercapitalized, or that the First National Bank was the only source from which the Debtor could have obtained its loan. The Trustee relies entirely upon the loan documents in this case as the basis of his argument, and after careful analysis, the Court must find that these documents present a simple guarantee situation which should not be turned into anything else by this Court.

The Trustee argues that the document entitled "Pledge of Collateral," which Mr. Harrold executed, serves to give the Debtor absolute control over the assets of Mr. Harrold, and for this reason, the property should be treated as a capital contribution. Admittedly, the language of the pledge appears to have a substantial effect on Mr. Harrold's rights in his assets, but it must be noted that the pledge is given to the First National Bank rather than the Debtor. There has been no showing that the Debtor ever exercised any control over the assets of Mr. Harrold or that any creditor of the Debtor other than the First National Bank ever relied upon Mr. Harrold's assets in transacting business with the Debtor. The pledge alone, without extenuating circumstances, is simply insufficient for this Court to treat Mr. Harrold's assets as a capital contribution to the Debtor.

The Trustee in this case does not seek to marshal assets under the traditional scheme of marshaling. In essence, what he seeks to do is "pierce the corporate veil" and use the assets of a shareholder to satisfy the claims of corporate creditors. In order to do this, a showing of inequitable conduct, disregard for the corporate structure, or fraud must be shown, and there has been no showing that Mr. Harrold has been guilty of any of this type of conduct.

As it has been so aptly stated by the Bankruptcy Court for the Central District of California:

> It is poor policy for courts to upset legitimate business transactions because of some vague concept of equity. We tend to forget that these decisions affect future commercial transactions. Advantageous and proper loans to corporations may be frustrated because shareholders would be fearful of having their personal assets marshaled for corporate creditors should they guarantee a corporate debt.

*Stuhley v. SBA (In re United Medical Research, Inc.)*, 12 B.R. 941 (Bkrtcy.C.D.Cal. 1981).

It would not be good policy for this Court to stray from the traditional concept of marshaling and grant the relief sought by the Trustee without a firmer factual foundation. Accordingly, the Court must deny the Trustee's request for marshaling.