In re PLAD, INC., Debtor.

WHIRLPOOL CORPORATION, Plaintiff,

and

First American Bank of Nashville, N.A.,
Intervening Plaintiff,

v.

PLAD, INC., et al., Defendants.

Bankruptcy No. 382–01282.
Adv. No. 382–0273.

United States Bankruptcy Court,
M.D. Tennessee.

Oct. 27, 1982.

Larry Stewart, Nashville, Tenn., trustee.

Marc T. McNamee, Nashville, Tenn., for petitioning creditors.

Samuel L. Felker, Nashville, Tenn., for First American Bank.

Mark Schneider, Nashville, Tenn., for debtor.

Samuel D. Lipshie, Nashville, Tenn., for Whirlpool Corp.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

 This adversary proceeding was initiated by the plaintiff Whirlpool Corporation to determine the debtor Plad, Inc.'s interest in certain machinery and, if the court determined that Plad had an interest in this machinery, to obtain relief from the automatic stay pursuant to 11 U.S.C. § 362(d). First American Bank subsequently intervened in this proceeding to assert a security interest in the debtor's inventory, including the equipment in question, and to obtain relief from the stay to enforce this security interest. At the hearing of this matter on June 23, 1982, the trustee stated in open court that Whirlpool had made an offer of settlement which included the payment of $125,000.00 to the court to be distributed in accordance with the further orders of the court. First American contended that these funds should be disbursed to First American in satisfaction of its perfected security interest in the debtor's inventory. The trustee objected to this proposal on the basis that First American's security interest in the settlement proceeds was unperfected since First American's financing statement did not contain an after-acquired property clause. The trustee further asserted that, even if First American possessed a perfected security interest, the court should impose the equitable doctrine of marshaling of assets and require First American to first satisfy its security interest from property pledged by the debtor's president Neal Sullivan as a personal guaranty of the corporation's indebtedness to First American.[1] The offer of settlement between the debtor and Whirlpool was finalized by order of this court on July 20, 1982. The only matter remaining for this court's consideration is, therefore, the distribution of the proceeds obtained by the estate from the aforementioned settlement. Upon consideration of the evidence presented at the hearing, stipulations, exhibits, briefs of the parties and the entire record, this court concludes that First American has a perfected security interest in the proceeds obtained from the Whirlpool settlement. The court is further of the opinion that the doctrine of marshaling should not be applied in this case.

The following shall constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

On April 23, 1982, several of Plad's creditors filed an involuntary Chapter 7 petition against Plad in this court. Whirlpool subsequently commenced this adversary proceeding on May 4, 1982, to ascertain the debtor's right in several items of equipment. First American's motion to intervene in this proceeding was granted on May 28, 1982.

---

1. The trustee also requested that First American be required to marshal other property of the debtor which is subject to First American's lien. No proof was presented as to the existence of any other assets of value. Even if such assets are available, the trustee would gain no benefit from marshaling since he has a junior interest in both the settlement proceeds and any other assets of the estate covered by First American's security interest. Marshaling is only proper when the requesting party does not possess a lien on one of the funds sought to be marshaled. *McAllester v. Andrews,* Bk. 76–267 and 76–268, slip op. at 6 (Bankr.M.D.Tenn. March 20, 1979).

At the hearing of this matter on June 23, 1982, Zachary Martin, Assistant Vice-President of First American Bank, testified that the debtor currently owed First American approximately $129,388.52. As security for this indebtedness, First American and the debtor had executed a security agreement which granted First American a security interest in all of the debtor's inventory, including inventory which was acquired after the creation of the security agreement. First American properly perfected this security agreement by filing a financing statement with the Secretary of State for Tennessee on May 29, 1979. The financing statement listed the property covered as all inventory, contract rights, accounts receivable and general intangibles described in the security agreement dated June 7, 1981.

First American also obtained Neal Sullivan's personal guaranty to assure repayment of the debt. As part of this guaranty, Sullivan granted First American a lien on two parcels of real property located in Davidson County, Tennessee. Both of these deeds of trust are apparently subject to prior liens. No proof was presented at the hearing as to the value of the encumbered property or as to the amount of indebtedness owed to any prior lienholders.

On July 20, 1982, this court approved Whirlpool's offer to settle their claim against the debtor. This settlement included the payment of $125,000.00 to the estate, which funds are now in the custody of the court. All parties have stipulated that the proceeds from this settlement are proceeds obtained from the sale of inventory which the debtor acquired after the execution of the security agreement with First American. The only issue before the court is the ultimate distribution of the $125,000.00 proceeds.

■ The court initially concludes that First American has a properly perfected security interest in these proceeds. First American's security agreement expressly provides that its security interest encompasses after-acquired inventory. The trustee nevertheless contends that First American's security interest is unperfected since the financing statement filed by First American does not explicitly state that the security interest extends to after-acquired inventory. The failure of the financing statement to refer to after-acquired inventory does not, however, render First American's security interest in such property unperfected. *See Thorp Commercial Corp. v. Northgate Industries, Inc.,* 654 F.2d 1245, 1248–1251 (8th Cir.1981); *United States v. Southeast Mississippi Livestock Farmers Ass'n,* 619 F.2d 435, 439 (5th Cir.1980); *Westinghouse Credit Corp. v. Dugas (In re Stofko),* 17 B.R. 115, 119 (Bkrtcy.W.D.Pa. 1981); *Sweney v. Cardinal Doors, Inc. (In the Matter of Door Supply Center, Inc.),* 3 B.R. 103, 106 (Bkrtcy.D.Idaho 1980). *See also In re Wilson,* 13 U.C.C.Rep.Serv. (Callaghan) 1195, 1199–1202 (Bankr.E.D.Tenn. 1973). Section 47–9–402 of the Tennessee Code prescribes that a financing statement must contain a "statement indicating the types, or describing the items, of collateral." There is no statutory requirement that the financing statement include an after-acquired property clause nor does the language of § 47–9–402 imply that such a clause must be incorporated in the financing statement in order to be binding on third parties. In fact, the comments to § 47–9–402 explain that the financing statement is primarily intended to provide third parties with notice that a security interest may exist in the types of collateral listed and that all concerned parties must make further inquiry in order to discover the "complete state of affairs." Tenn.Code Ann. § 47–9–402 comment 2 (1979). First American thus has a secured lien in the proceeds obtained from the Whirlpool settlement.

■ Nor can the court accept the trustee's second contention that First American be required to marshal all property in which it has a lien to satisfy its claim against the debtor. The trustee specifically requests that the court order First American to first satisfy its claim from the personal assets pledged by Plad's president Neal Sullivan to guarantee the indebtedness of Plad. As this court has previously recognized, the

equitable doctrine of marshaling assets is designed to protect the interest of junior lienholders in property when the senior lienholder can resort to other funds of the debtor in which the junior lienholder has no interest to satisfy his indebtedness. In such cases, the junior lienholder may invoke the equitable powers of the bankruptcy court to compel the senior lienholder to resort to the second fund to obtain satisfaction of his claim. *McAllester v. Andrews,* Bk. 76–267 and 76–268, slip op. at 6–8 (Bankr.M.D. Tenn. March 20, 1979). *See also Meyer v. United States,* 375 U.S. 233, 236–237, 84 S.Ct. 318, 320–21, 11 L.Ed.2d 293 (1963); *United States v. Friend (In re A.E.I. Corp.),* 11 B.R. 97, 99 (Bkrtcy.E.D.Pa.1981); *Gilliam v. McCormack,* 85 Tenn. 597, 4 S.W. 521, 523 (1887).

■ Marshaling can only be applied by the court, however, if funds exist which belong to a *common debtor* of the junior and senior lienholders. *See, e.g., In re Beacon Distributors, Inc.,* 441 F.2d 547, 548–549 (1st Cir.1971); *Colvin v. Petree (In re Dan Hixson Chevrolet Co.),* 20 B.R. 108, 113 (Bkrtcy.N.D.Tex.1982); *McDonald v. First National Bank (In the Matter of Harrold's Hatchery and Poultry Farms, Inc.),* 17 B.R. 712, 716 (Bkrtcy.M.D.Ga.1982); *United States v. Friend (In re A.E.I. Corp.),* 11 B.R. at 99; *House v. Thompson,* 40 Tenn. (3 Head) 512, 516–517 (1859). The trustee in this case seeks to have First American first satisfy its claim from the individual assets of the debtor corporation's president. Obviously, the debtor corporation and its president are two separate and distinct entities.

Several courts have nonetheless held that marshaling under such circumstances is appropriate if the court determines that the corporate veil should be pierced or that the assets contributed by the individual officer or director were in fact contributions to capital. *See Berman v. Green (In re Jack Green's Fashions for Men—Big and Tall, Inc.),* 597 F.2d 130, 131–133 (8th Cir.1979); *In the Matter of Multiple Services Industries, Inc.,* 18 B.R. 635, 636–637 (Bkrtcy.E.D. Wis.1982); *Farmers & Merchants Bank v. Gibson,* 7 B.R. 437, 439–442 (Bkrtcy.N.D. Fla.1980).[2]

■ Although this court is of the opinion that the aforementioned exceptions should be applied in appropriate cases, clear proof of their existence must be presented in order to overcome the strong presumption that a corporation is a distinct entity from those individuals who manage its affairs. Such a stringent standard of proof is necessary since the marshaling of an individual's assets to extinguish a corporate debt will in all likelihood be detrimental to the interests of the individual's personal creditors. *See Stuhley v. United Medical Research, Inc. (In re Stuhley),* 12 B.R. 941 at 943. The trustee requesting marshaling in this case has not met this burden of proof. The record does show that Sullivan is the president of the debtor corporation and that he did personally guarantee a loan made to the debtor corporation and pledged two parcels of real property as security for this guarantee. There is, however, no evidence that Sullivan treated corporate property and his individual property as if they were the same or that

**2.** This flexible approach to finding a common debtor for the purposes of marshaling assets was severely criticized by Bankruptcy Judge Peter M. Elliott in *Stuhley v. United States Small Business Administration (In re United Medical Research, Inc.),* 12 B.R. 941, 942 (Bkrtcy.C.D.Cal.1981). Judge Elliott explained that:

"It is poor policy for courts to upset legitimate business transactions because of some vague concept of equity. We tend to forget that these decisions affect future commercial transactions. Advantageous and proper loans to corporations may be frustrated because shareholders would be fearful of having their personal assets marshaled for cor-

porate creditors should they guarantee a corporate debt."

*Stuhley v. United States Small Business Administration (In re United Medical Research, Inc.),* 12 B.R. at 943. The court, therefore, opted to impose the equitable remedy of marshaling in such circumstances only when the proof showed that the corporate shareholder or officer had been "guilty of fraud, overreaching or other inequitable conduct." *Stuhley v. United States Small Business Administration (In re United Medical Research, Inc.),* 12 B.R. at 944. *Accord McDonald v. First National Bank (In the Matter of Harrold's Hatchery and Poultry Farms, Inc.),* 17 B.R. at 714–717.

680

Sullivan intended for First American to look primarily to his individual property in satisfaction of the corporate loan. Under these circumstances, the court can only assume that the personal assets of Sullivan are separate and distinct from the corporate assets. Since one of the elements of marshaling is missing, the court must deny the trustee's application. *See Port Welcome Cruises, Inc. v. S.S. Bay Belle,* 215 F.Supp. 72, 85 (D.Md.1963); *Colvin v. Petree (In re Dan Hixson Chevrolet Co.),* 20 B.R. at 113; *McDonald v. First National Bank (In the Matter of Harrold's Hatchery and Poultry Farms, Inc.),* 17 B.R. at 716–717; *United States v. Friend (In re A.E.I. Corp.),* 11 B.R. at 100.

Even if the trustee had overcome this first hurdle, the court would still deny the trustee's request since he has failed to show that marshaling would benefit the estate without imposing any undue hardship on the senior lienholder. The burden is on the party seeking to invoke marshaling to justify its application. As the Tennessee Supreme Court explained in *Mowry v. Davenport,* 74 Tenn. (6 Lea.) 80, 99–100 (1880):

"The general principle is, that if one party has a lien on or interest in two funds for a debt, and another party has a lien on or interest in one only of the funds for another debt, the latter has a right in equity to compel the former to resort to the other fund, in the first instance, for satisfaction, if necessary, wherever it will not touch upon the rights, or operate to the prejudice of the party entitled to both funds... And it is universally conceded in the practicable application of the principle, that the securities will not be so marshaled as to deprive the party with two funds of any legal right, or operate to his prejudice... In all such cases, the creditor asking equity must be content with subrogation, or the assignment of remedies, and assume the expenses and take the risk and delay of the subsequent litigation. *Upon no principle of law or equity can he throw the burden upon the creditor having the prior right to both funds."* (emphasis added). (citations omitted).

*Accord Victor Gruen Associates, Inc. v. Glass,* 338 F.2d 826, 829 (9th Cir.1964); *Westinghouse Credit Corp. v. Central Trust Co. (In re Leonardo),* 11 B.R. 453, 455 (Bkrtcy.W.D.N.Y.1981).

The trustee has failed to overcome this burden. The record reveals that both of the parcels of real estate pledged by Sullivan as security for his personal guaranty are encumbered by prior mortgages. No evidence was presented as to either the value of these properties or the amount of the prior encumbrances on these properties. The court, therefore, has no knowledge as to whether First American's foreclosure on these properties would yield any funds in satisfaction of its claim. Should marshaling be imposed on First American, First American would be forced to incur additional expense and delay in foreclosing on property which might very well be worthless. This court cannot sanction the imposition of marshaling in such an uncertain situation.

Accordingly, the court will enter an order denying the trustee's request that First American be required to marshal assets.

IT IS, THEREFORE, SO ORDERED.