FIRST INTERSTATE BANK OF CALIFORNIA, a Califor-nia Banking Corporation, Appellant/Cross-Respondent, v. H.C.T., Inc., a California Corporation, aka H.C.T., Incorporated, a Cali-fornia Corporation, Respondent/Cross-Appellant, and INDEPENDENCE BANK, a California State Banking Corporation, Respondent.

No. 22165

March 13, 1992 828 P.2d 405

*Gordon & Silver* and *Candi Carlyon,* Las Vegas, for Appellant/Cross-Respondent.

*Lefebvre, Barron & Oakes,* Las Vegas, for Respondent/Cross-Appellant H.C.T.

*Miles & Tierney,* Las Vegas, for Respondent Independence Bank.

## OPINION

*Per Curiam:*

### Facts

First Interstate Bank of California (FICAL) and Independence Bank both assert a claim to a Certificate of Deposit (CD) in the approximate amount of $322,000. The district court awarded the CD to Independence Bank on summary judgment. FICAL appealed.

In 1988, H.C.T., Inc., (HCT) borrowed $350,000 from Independence Bank; the loan was guaranteed by two of HCT's principals.

Shortly thereafter, HCT purchased a CD from First Interstate Bank of Nevada (FINEV) for $321,444.32 in the name of Sunrise Development Co. (Sunrise) and Clark County Public Works.[1] The CD was in lieu of an off-site improvement bond by HCT. In May of 1990, HCT assigned its entire interest, rights and title in the CD to Independence Bank.

Also in May of 1990, FICAL obtained a judgment against HCT for $314,059.65 in a California superior court. HCT appealed the California judgment and FICAL cross-appealed.

Meanwhile, HCT and Sunrise entered into arbitration proceedings to determine ownership of the CD. On July 24, 1990, HCT was awarded the funds by the American Arbitration Association. On August 21, 1990, the arbitrator's award was judicially confirmed.

In August of 1990, FICAL filed suit in Nevada district court to enforce the California foreign judgment against HCT and applied for, *inter alia,* a writ of garnishment on the CD. The district court issued the writ. On August 20, 1990, FICAL served the writ of garnishment on the CD to FINEV, which held the CD. HCT moved to dismiss FICAL's action seeking to enforce the California judgment, or in the alternative for summary judgment, alleging the California judgment was not final because both HCT

---

[1]Neither Sunrise nor Clark County are involved in this appeal.

and FICAL had appealed the judgment. The district court denied the motion and ordered FICAL to comply with the requirements for commencing action pursuant to the Nevada Uniform Enforcement of Foreign Judgments Act (NRS 17.330 *et. seq.*). FICAL complied.

Meanwhile, FINEV filed a complaint for interpleader, requesting that the court make a determination as to the ownership of the CD. HCT filed a motion for summary judgment in the interpleader case, claiming it had assigned its interest in the CD to Independence Bank prior to the time of FICAL's writ of garnishment on the CD and therefore Independence Bank's interest took priority. Independence Bank later joined in HCT's motion. FICAL's action to enforce its foreign judgment was then consolidated with the interpleader case.

The district court granted the HCT/Independence Bank motion for summary judgment, directing the CD funds to be delivered to Independence Bank. The summary judgment was certified as final pursuant to NRCP 54(b). FICAL appealed the summary judgment. HCT cross-appealed from the order denying HCT's motion to dismiss FICAL's suit to enforce its foreign judgment.

On appeal, FICAL argues: (1) the district court erred in determining that Independence Bank was entitled to the CD under the "first in time" rule; (2) HCT's actions belie its contention that it assigned its interest to Independence Bank; and (3) Independence Bank should have been compelled to satisfy its claim from other assets of HCT under the "marshaling of assets" doctrine.

### Priority

FICAL argues that its interest in the CD attached on August 20, 1990, when its writ of garnishment was served on FINEV and that HCT's/Independence Bank's interest attached on August 21, 1990, when the district court confirmed HCT's arbitration award. FICAL's argument is illogical. If HCT did not have an interest in the CD until August 21, 1990, then FICAL could not have levied a writ of garnishment against it on August 20, 1990. In order to determine priority, the threshold question in this case is: at what point in time did HCT acquire its interest in the CD— when it was awarded the funds in arbitration, or when the district court confirmed the arbitration award?

The Legislature intended for an arbitration award to be final and binding. City of Boulder v. General Sales Drivers, 101 Nev. 117, 119, 694 P.2d 498, 500 (1985). Upon application to a district court, the award shall be confirmed unless grounds are urged for modifying, vacating or correcting the award. NRS

38.135.[2] In deciding whether a party's rights vest upon the declaration of the arbitration award or upon judicial confirmation, one court states:

> An arbitration award conclusively determines the rights of the parties unless it is invalidated by a reviewing court. Thus, if the award is upheld in a reviewing court, *the rights of the parties are determined from the date of the award and not the date of the court's judgment confirming the award.* Any other result would defeat the purpose of arbitration which is to finally decide the issues between the arbitrating parties without judicial intervention.

Marion Mfg. Co. v. Long, 588 F.2d 538, 541 (6th Cir. 1978) (citations omitted) (emphasis added). We agree with the Sixth Circuit and hold that HCT acquired its interest in the CD when it was awarded the funds in arbitration.

HCT assigned its interest in the CD to Independence Bank on May 4, 1990. HCT was awarded the CD in arbitration on July 24, 1990. The interest which HCT assigned to Independence Bank on May 4, 1990, became valuable when HCT was awarded the CD. HCT's interest in the CD, as well as Independence Bank's interest by assignment, was prior in time to FICAL's interest which vested on August 20, 1990, when FICAL served the writ of garnishment against the CD.

Priority between a garnishment and an assignment depends on which interest is first in time. Board of Trustees v. Durable Developers, 102 Nev. 401, 415, 724 P.2d 736, 746 (1986). However, an assignment takes priority over a writ of garnishment only to the extent that the consideration given for the assignment represents an antecedent debt or present advance. *Id.* (citing NRS 112.040 (repealed by Statutes of Nevada 1987 ch. 9); *cf.* NRS 112.170).[3]

In the case at hand, HCT assigned Independence Bank its interest in the CD for the antecedent debt of $350,000 owed by

---

[2]NRS 38.135 provides in relevant part:

Confirmation of award. Upon application of a party within 1 year, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award . . . .

[3]NRS 112.170 provides in relevant part:

1. Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied . . . .

HCT to Independence Bank. The CD was purchased in July of 1988 for $321,444.32. Independence Bank gave at least $350,000 consideration for the assignment. Therefore, Independence Bank has priority in the CD to the extent of $350,000 plus whatever interest HCT owed Independence Bank on the antecedent debt.

## The Assignment

FICAL contends that HCT's actions in pursuing this litigation are inconsistent with its assertion that it made a valid assignment to Independence Bank. We disagree.

HCT's actions in pursuing this case are consistent with its assignment to Independence Bank. It is true that HCT was not the real party in interest after it assigned its interest in the CD to Independence Bank. *See* Thelin v. Intermountain Lumber, 80 Nev. 285, 392 P.2d 626 (1964). However, HCT needed to prove its initial interest in the CD in order to enable Independence Bank to prevail in this lawsuit. HCT had an interest in Independence Bank taking priority in order to pay off its debt to Independence Bank.

FICAL also argues that HCT did not have standing to pursue the litigation. This argument is moot; the issue of standing was resolved when Independence Bank, as the real party in interest, joined HCT in its motion for summary judgment.

## Marshaling of Assets

FICAL asserts that the only asset of HCT's it can look to for satisfaction of its judgment is the CD and that Independence Bank may resort to two funds: the CD and the personal guarantees of HCT's stockholders/principals. Therefore, FICAL argues that the district court erred in not ordering marshaling of assets, contending that if the asserts are marshaled, both FICAL and Independence Bank will receive full payment. This is an issue of first impression in Nevada.

Marshaling of assets is provided for by NRS 100.040, which reads:

> Requiring resort to different funds. Where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all, of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons.

## Both Funds Must be in the Hands of the Debtor

Whether both creditors can be satisfied in full if marshaling is compelled is of no consequence. It is a well-settled rule that marshaling of assets is only appropriate where both funds are in the hands of a common debtor of both the senior and junior creditors. DuPage Lumber & Home Imp. v. Georgia-Pacific Corp., 34 B.R. 737 (Bankr. N.D. Ill. 1983); In re United Medical Research, Inc., 12 B.R. 941 (Bankr. C.D. Cal. 1981). Marshaling is barred when one of the funds is in the hands of a surety of the debtor. DuPage Lumber, 34 B.R. at 740 (citing 53 Am.Jur.2d Marshaling Assets § 10 at 17 (1970)). The rule regarding marshaling where one of the funds is in the hands of a surety of the debtor is summed up as follows:

> A surety is not a "fund" or "security" in a sense which those terms are used in connection with the principle of marshaling. A creditor cannot be compelled to satisfy his debt from the sureties of his debtor before resorting to a fund or collateral security on which he has a lien. Again, in the absence of some special equity, the principle of marshaling assets is not applicable to a case where one of the funds is property of a surety of the common debtor.

53 Am.Jur.2d Marshaling Assets § 23 at 24 (1970) (footnotes omitted). The view that a junior creditor may not compel marshaling where one fund is in the hands of a surety is consistent with virtually all courts which have specifically addressed this issue. Matter of Willson Dairy Co., 30 B.R. 67, 71 (Bankr. S.D. Ohio 1981) (citing Annot., 135 A.L.R. 740). The roots of the rule regarding sureties date back to 1817. Willson Dairy, 30 B.R. at 71 (citing Union Bank v. Laird, 15 U.S. (2 Wheat.) 390 (1817)).

Where a fund is held by a surety or guarantor, marshaling is barred because the debtor does not hold the funds which are in the hands of the surety or guarantor. DuPage Lumber, 34 B.R. at 740; Willson Dairy, 30 B.R. at 71; United Medical Research, 12 B.R. at 942. Additionally, both funds must be within the jurisdiction and control of the court. Lewis v. United States, 92 U.S. 618, 623 (1875).

Very few courts have found an exception to the settled rule and have compelled marshaling where both funds are not in the hands of the debtor. See In re Jack Green's Fashions for Men—Big & Tall, 597 F.2d 130 (8th Cir. 1979). In Jack Green's, a clothing corporation borrowed money from the senior creditor and

secured the loan by both a lien on the business assets and on personal residences owned by the principals of the corporation. *Id.* at 131-32. The court ordered the senior creditor to resort first to the real estate for satisfaction of its debt, stating that if the senior creditor were allowed to exhaust the business assets, the general creditors would receive nothing. *Id.* at 133; *see also* Matter of Multiple Services Industries, Inc., 18 B.R. 635 (Bankr. E.D. Wis. 1982); Farmers & Merchants Bank v. Gibson, 7 B.R. 437 (Bankr. N.D. Fla. 1980), *vacated sub nom,* Peacock v. Gibson, 81 B.R. 79 (Bankr. N.D. Fla. 1981). In *Multiple Services* and *Farmers,* the courts allowed marshaling because they "were particularly concerned that the working-capital loans [to corporations], secured by guaranties and privately-owned real estate, could deceive trade creditors by giving the illusion of adequate capitalization." DuPage Lumber & Home Imp. v. Georgia-Pacific Corp., 34 B.R. 737, 742 (Bankr. N.D. Ill. 1983).

The *Jack Green's* and *Farmers* decisions have been severely criticized. *Id.* at 742. As one court stated:

> It is poor policy for courts to upset legitimate business transactions because of some vague concept of equity. We tend to forget that these decisions affect future commercial transactions. Advantageous and proper loans to corporations may be frustrated because shareholders [or guarantors] would be fearful of having their personal assets marshaled for corporate creditors should they guarantee a corporate debt.

In re United Medical Research, Inc., 12 B.R. 941, 943 (Bankr. C.D. Cal. 1981). We decline to follow *Jack Green's.* To compel marshaling against a guarantor in situations similar to the case at bar would result in a chilling effect on guarantees.

### *Marshaling Cannot Force the Senior Creditor Into Independent Litigation*

Additionally, if marshaling were ordered in this case, Independence Bank would be forced to obtain a judgment against the guarantors and then execute on the judgment. Marshaling cannot be invoked if it will compel the senior creditor to proceed with an independent action to obtain a judgment. Dixieland Realty Co. v. Wysor, 158 S.E.2d 7, 14-15 (N.C. 1967) (citing 55 C.J.S. *Marshaling Assets and Securities* § 4, at 962).

FICAL argues that the guarantors are already a party to an action by Independence Bank against HCT and the guarantors in California. However, FICAL provides no proof that this is true.

Even if FICAL's assertions are accurate, marshaling is still barred because the guarantors are not a party to *this* suit. Some courts consider this an "absolute denial" of due process for the guarantors. In re Mesa Intercontinental, Inc., 79 B.R. 669, 673 (Bankr. S.D. Tex. 1987); In re Coors of North Mississippi, Inc., 66 B.R. 845, 869 (Bankr. N.D. Miss. 1986). We agree. We will not compel marshaling against guarantors who are not a party to this suit and who have no notice of marshaling proceedings against their assets.

Marshaling in this case is improper on the grounds that the two funds are not within the hands of the debtor and the guarantors are not a party to this suit.

### The Cross-Appeal

HCT moved to dismiss FICAL's action seeking to enforce the California judgment against HCT, or in the alternative for summary judgment, alleging the California judgment was not final because both HCT and FICAL had appealed. The district court denied the motion and ordered FICAL to comply with the requirements for commencing action pursuant to the Nevada Uniform Enforcement of Foreign Judgments Act (NRS 17.330 *et. seq.*). HCT appeals from the denial of its motion to dismiss.

NRAP 3A(b), designates orders and judgments from which an appeal may lie. Where appeal is not granted by statutory authority, no right to appeal exists. Taylor Constr. Co. v. Hilton Hotels, 100 Nev. 207, 678 P.2d 1152 (1984). The order denying HCT's motion is not appealable because it is not listed as an appealable order in NRAP 3A(b).

Additionally, HCT is pursuing an appeal which involves the issues of whether FICAL can enforce its foreign judgment against HCT's assets in Nevada. While FICAL's enforcement action against HCT was consolidated with the FINEV interpleader case, only summary judgment regarding the CD was rendered and certified pursuant to NRCP 54(b).

The only issue which the summary judgment resolved was which party was entitled to the CD. In the summary judgment, the district court did not include a disposition regarding the issue of whether FICAL's enforcement action against HCT was allowable by Nevada law. Because the summary judgment which was certified did not resolve the issue of whether FICAL can enforce its foreign judgment, HCT cannot challenge the order in this appeal. This court has made it clear that in a consolidated case, only the claim which is certified pursuant to NRCP 54(b) is final

and appealable. *See* Mallin v. Farmers Insurance Exchange, 106 Nev. 606, 609, 797 P.2d 978, 980 (1990).

The cross-appeal is not properly before this court. We therefore dismiss the cross-appeal for lack of jurisdiction.

## Conclusion

The district court properly entered summary judgment in favor of Independence Bank. Independence Bank's interest in the CD was first in time to FICAL's and therefore has priority. FICAL may not compel the marshaling of assets under the circumstances of this case. Further, this court lacks jurisdiction to consider the cross-appeal.

Accordingly, we affirm the judgment entered below and dismiss the cross-appeal.

Mowbray, C. J., Springer, Rose and Young, JJ., and Ames, D.J.,[4] concur.