In the Matter of **FARMERS FEDERA-TION COOPERATIVE, INC.,**
Bankrupt.

Columbia Bank for Cooperatives,
Petitioner,

**H. Kenneth Lee, Trustee in Bankruptcy,**
Respondent.

No. 1228.

United States District Court
W. D. North Carolina,
Asheville Division.

July 15, 1965.

John E. Shuford and Herbert I. Hyde, Asheville, N. C., for petitioner.

Thomas A. Uzzell, Jr., and Frank Parker, Asheville, N. C., for respondent.

CRAVEN, Chief Judge.

After bankruptcy adjudication on February 15, 1963, against Farmers Federation Cooperative, Inc. (hereinafter called Federation), Columbia Bank for Cooperatives (hereinafter called the Bank) filed its proof of secured claim in the amount of $162,155.85. The trustee admitted the claim but was allowed by the referee to credit against it the sum of $113,120.82, representing the value of stock and allocated surplus owned by Federation in the Bank. Bank excepted to the referee's decision and, pursuant to 11 U.S.C.A. § 11, sub. a(10), petitioned this court for review.

Bank is a corporation established under the Farm Credit Act of 1933 and amendments thereto (12 U.S.C.A. § 1134 et seq.).[1] Its purpose is to help meet the credit needs of farmers cooperatives and establish a sound financial system for their operation.

In this case all loans made by Bank to Federation were secured by various mortgages and deeds of trust on lands, buildings, fixtures, machinery and equipment located in various counties in western North Carolina. In addition, the Bank had a first lien on all stock in the Bank owned by Federation.[2] The stock pledged consists of: (1) 458 shares of class B stock in the Bank which had a par value of $45,800.00, (2) 542.7518 shares of class C stock with a par value of $54,275.18, and $13,045.64 of accumulated surplus.

By consent, some of the real property on which the Bank held deeds of trust was sold, and on July 17, 1963, the referee ordered the trustee to deposit in a special account the proceeds from the sale, amounting to $162,000.00, pending further proceedings.

Subsequently, the referee adjudged that the fair book value[3] of both class B and class C stocks was not less than par, and credited against the claim of Bank the sum of $113,120.82 (the combined value of the stock and allocated surplus). On June 5, 1964, the referee directed Federation to surrender its stock together with all rights to accumulated surplus to Bank and directed Bank to credit its value against the indebtedness. The parties were directed to determine the balance due after applying the credit, and the undetermined balance was allowed as a secured claim against the realty fund.

Bank's brief is directed primarily to the contention that the stock holdings and accrued surplus owned by Federation are not "mutual debts" within the meaning of the Bankruptcy Act, affording the right of set-off against the

1. There are thirteen such banks in the United States, one in each of the twelve farm credit districts into which the United States is divided and a central bank in Washington, D. C.

2. Title 12 U.S.C.A. § 1134d(c) provides, in part: "Except as hereinafter provided in the case of an association which is a direct borrower from the central bank, each bank for cooperatives shall have a first lien on all stock in the bank owned by each cooperative association as additional collateral for any indebtedness of such association to the bank."

3. Market value apparently is not the test; the statute, 11 U.S.C.A. § 93, sub. h, uses the word value without qualification. Clearly, the referee, in determining "book value", meant also value of the stock in question.

secured claim of Bank.[4] Federation's brief concedes the point. Federation is a stockholder in the Bank; a stockholder is not, in the ordinary sense, a creditor. 18 Am.Jur.2d 982, Corporations, Section 488; see Schneider v. Mingenback, 139 F.2d 86, 87 (10th Cir. 1943); Brust v. Sturr, 128 F.Supp. 188 (D.C.N.Y.1955). But that does not end the matter.

Federation argues that a credit for the stock and accrued surplus should be allowed under 11 U.S.C.A. § 93, sub. h and the marshalling of assets theory.

Title 11 U.S.C.A. § 93, sub. h provides as follows:

"The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the trustee by agreement, arbitration, compromise or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance. Such determination shall be under the supervision and control of the court."

This section is an attempt "to find a reasonable compromise between the basic principle of equality of distribution, on the one hand, and accord due respect for the necessities of legitimate credit transactions, on the other." 3 Collier, Bankruptcy 298, Section 57.20 (14th Ed. 1964). It is applicable in this case.

■ The Bank, by its mortgages and deeds of trust on various property of Federation, and its first lien on the stock and allocated surplus, was, in effect, twice secured for the same debt. Undoubtedly Bank would have asserted its lien against the stock and allocated surplus had its mortgages and deeds of trust proved of little or no value. As a matter of equity, this should work both ways. The value of the stock and allocated surplus should be credited against Bank's claim since it could have proceeded against that security in satisfaction of its claim.

The referee concluded "that all the equities in this case should require that the claimant make the credit against its claim as prayed for by the trustee pursuant to 11 U.S.C.A. Section 93(h) * * *."[5]

If the stock involved here were freely transferable or saleable on the open market, there would be no problem, as it could be sold and the proceeds applied to the debts of Federation. But class C stock is not saleable or transferable except to another bank or cooperative. Class B stock can be sold to such persons as may be approved by Columbia Bank—a provision which has a somewhat chilling effect on saleability.[6]

The Bank is authorized by statute to retire and cancel stock owned by a borrower in partial or total liquidation of the debt where the borrower is in default, dissolution, or liquidation. The Bank argues that to allow Federation to credit the stock against its debt would result in a premature forced redemption of the stock and prejudice other cooperatives whose stock, by reason of prior issuance, enjoys prior redemptive rights. But the Bank made no showing of prejudice or injury to others.

4. Title 11 U.S.C.A. § 108, which controls the right of set-off in bankruptcy, provides: "a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

5. "The uniform practice in bankruptcy has been to deduct the security from the debt." 3 Collier, Bankruptcy 298, Section 57.20 (14th Ed. 1964) (citing New York Trust Co. v. Palmer, 101 F.2d 1 (2d Cir. 1939).

6. Federation has been offered $50,000.00 for all of its stock and surplus account by another cooperative. No other offers have been received and none are likely considering the restrictions on transfer and ownership. It is doubtful this offer is still open.

This argument, even conceding that a "premature forced redemption" situation may result, is without merit when considered with the clear statutory provisions for retirement and cancellation of such stock.[7] What the trustee is asking to be done, the Bank, by statute, has *discretionary* authority to do. An arbitrary refusal to act is not the exercise of discretion. "'Discretion' * * * means 'sound discretion', not discretion exercised arbitrarily, but with due regard for that which is right and equitable under the circumstances, and directed by reason and conscience to a just result." United States v. D'Argento, 227 F.Supp. 596 (D.C.Ill.1964); cf. Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931); Smaldone v. United States, 211 F.2d 161 (10th Cir. 1954); Mitchell-Huron Production Credit Association v. Welsh, 163 F.Supp. 883 (D.C.S.D.1958). Under the circumstances of this case, the Bank should not refuse to do what it has authority to do when equity and justice demand it. The Bank did not see fit to disclose to the referee its reason, if any, for refusing to credit the stock against the debt, other than its bare conclusion that other borrowing coopera-tives would be injured. This is not what is meant by the exercise of discretion. If the credit is *not* allowed, the resulting pecuniary injury to other creditors of Federation is readily apparent. If credit *is* allowed, there is no showing of real detriment to Bank or other cooperatives.

Bank argues that under 11 U.S.C.A. § 93, sub. h,[8] the stock involved would have to be converted into money before its value could be determined, and this the referee did not do. This argument has no merit if it means that the stock must first be sold before its value could be determined.[9]

Title 11 U.S.C.A. § 93, sub. h is intended to provide two methods of valuing securities, In re Rochester Pad & Wrapper Co., 20 F.Supp. 295 (D.C. N.Y.1937), one by compromise or agreement and another by litigation. A hearing before the referee is sufficient litigation, In re Soltmann, 238 F. 241 (D.C. N.Y.), and the admission of the Bank is sufficient agreement. There is no genuine dispute as to value of the stock. An officer of the Bank said it was worth par. It is of no consequence that he was unsworn.

7. Title 12 U.S.C.A. § 1134d(c): "In any case where the debt of a borrower is in default, the bank may, in accordance with regulations of the Farm Credit Administration, retire and cancel all or a part of the stock of the defaulting borrower at the fair book value thereof, not exceeding par, in total or partial liquidation of the debt, as the case may be, and, to the extent required, corresponding shares held by a regional bank in the central bank shall be retired."
Title 12 U.S.C.A. § 1134*l*(d): Public Law 87–343, 87th Congress (1961) "*Notwithstanding any other provision of this Act*, in the case of liquidation or dissolution of any present or former borrower from a bank for cooperatives, the bank, may, in accordance with rules and regulations prescribed by the Farm Credit Administration, retire and cancel any capital stock or allocated surplus and contingency reserves or other equity interest, in the bank owned by such borrower at the fair book value thereof, not exceeding par, and, to the extent required, corresponding shares and alloca-tions or other equity interests held by the regional bank in the central bank shall be retired." (Emphasis added.)

8. Title 11 U.S.C.A. § 93, sub. h: "The value of securities held by secured creditors shall be determined by converting the same into money according to terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the trustee by agreement, compromise or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance. Such determination shall be under the supervision and control of the court."

9. "For practical purposes all valuations under Section 57(h) should be treated alike and no distinction for purposes of reconsideration should be made between conversion into money and any other form of determining the value of a security. * * *" 3 Collier, Bankruptcy 325, Section 57.20 (14th Ed. 1964).

The referee determined the value of the stock in terms of money after hearing argument on both sides and taking sufficient evidence. This is enough. In re Soltmann, supra.

After considering all the evidence, it is adjudged that the decision of the referee is supported by substantial evidence, and it is, therefore, affirmed. The petition of the Bank for review is dismissed.