Don **CAPLINGER**, Individually and as Trustee for Waldenburg Gin & Elevator Supply Company, Inc., Appellant,

v.

Claibourne W. **PATTY**, Jr., Trustee in Bankruptcy for Waldenburg Gin and Supply Co., Inc., Bankrupt, Appellee.

No. 18987.

United States Court of Appeals Eighth Circuit.

July 18, 1968.

Lee Ward, of Ward & Mooney, Jonesboro, Ark., for appellant.

Isaac A. Scott, of Wright, Lindsey & Jennings, Little Rock, Ark., for appellee.

Before VAN OOSTERHOUT, Chief Judge, BLACKMUN, Circuit Judge, and VAN PELT, District Judge.

VAN OOSTERHOUT, Chief Judge.

This is a timely appeal by Don Caplinger, individually and as trustee for the Waldenburg Gin & Elevator Supply Company, Inc., hereinafter for convenience jointly referred to as Caplinger,[1] from final order of the District Court denying review of an order of the Referee in Bankruptcy in a reclamation proceeding wherein Caplinger was ordered to turn over to the Trustee in Bankruptcy for the Waldenburg Gin and Supply Co., Inc., Bankrupt, $11,500 which he had received as proceeds from a mortgage foreclosure sale in the state court.[2]

We shall briefly summarize the background material. Caplinger's corporation, being the owner of the gin plant here in controversy, consisting of real estate, buildings, ginning equipment and other personal property, on June 26, 1964, sold and conveyed all of such assets (not the corporate stock) to Waldenburg Gin and Supply Co., Inc., a new, unrelated and separate corporation, the stock of which was owned by Mr. and Mrs. Clinton E. Bowling, the bankrupt in this proceeding, for $80,000. $50,000 of the sale proceeds was paid Caplinger with proceeds obtained by the purchaser from the Bank of Harrisburg through a first mortgage loan on the real and personal property sold. Caplinger received the balance of the purchase price in the form

1. Caplinger and his wife owned all the stock of the Waldenburg Gin & Elevator Supply Company, Inc. After the sale of all of the assets of such corporation on June 26, 1964, to Waldenburg Gin and Supply Co., Inc., the bankrupt herein, an entirely separate and distinct corporation from Caplinger's corporation but having a confusingly similar name, steps were taken to liquidate Caplinger's corporation. Caplinger is entitled to all of

the rights of his corporation and is also responsible for the return of the money here in controversy if the case was rightly decided below.

2. The review proceeding also involved the setting aside of certain garnishments as preferences. No attack is made upon such portion of the judgment on this appeal.

of a $30,000 mortgage, subject to the Bank's first mortgage on the real and personal property sold. The bankrupt, soon after the sale, paid Caplinger $5,000 on his second mortgage and paid some interest on the first mortgage, but has made no other payments. In the spring of 1965, Bowling advised the Bank and later Caplinger that he was abandoning the property and that he would make no more payments, and he actually abandoned the property on or about June 14, 1965.

The Bank and Caplinger jointly employed attorney Collier to foreclose their respective first and second mortgages. The joint foreclosure action was filed in the state court on June 10, 1965. A decree foreclosing the mortgages was entered on July 9, 1965. The mortgaged property was sold at public auction at a foreclosure sale in conformity with the decree and Arkansas law on August 19, 1965, to Donald Parker for $63,904.80.[3] The referee's certificate on the petition for review shows that the proceedings instituted by the Trustee against the Bank and the purchaser Parker were dismissed and that no appeal or review was sought upon the portion of the referee's order sustaining the sale to Parker and determining the validity of the Bank's prior lien on all the mortgaged property.

On August 25, 1965, an involuntary petition in bankruptcy was filed against Waldenburg Gin and Supply Co., Inc., and such corporation was adjudged a bankrupt by default on September 17, 1965. The Trustee was thereafter appointed and he brought this action. Additional material facts will be discussed during the course of the opinion.

Caplinger asserts the following errors as a basis for reversal:

1. There is no competent evidence to show that the bankrupt was insolvent at some time material to this proceeding.

2. There is no substantial evidence to support a finding that Caplinger's mortgage lien upon the personal property was not perfected by compliance with the provisions of the Arkansas U.C.C. more than four months prior to bankruptcy.

3. There is no factual basis for marshaling the assets of the bankrupt so as to deprive Caplinger of his admittedly superior lien upon the real estate of the bankrupt.

We believe that Caplinger's first two contentions lack merit. The trial court in its opinion of September 23, 1966, has convincingly demonstrated that the bankrupt corporation was insolvent at all times material to this action. There is substantial evidence to support the referee's findings, approved by the trial court, that Caplinger did not perfect his mortgage lien against the Trustee by reason of his failure to make the required statutory filing in the office of the Secretary of State, as required by Ark.Stats.Ann. § 85–9–401(1) (c). The Trustee's testimony to the effect that he searched the appropriate records in the office of the Secretary of State and found no record of such lien standing unrebutted affords evidentiary support for such finding. Caplinger's attorney, when asked by the referee whether there had been a filing with the Secretary of State, said his office had prepared the papers and he had no information such filing had been made and that he was not representing that such action had been taken. In the joint foreclosure ac-

3. In June of 1965 Caplinger and the Bank entered into negotiations with Parker looking toward the sale of the gin realty and personalty to him. Foreclosure apparently was necessary to cut out junior liens and claims. Parker agreed in writing to bid at least $62,766 for the property at foreclosure sale. Bowling had individually guaranteed the corporate sec-

ond mortgage note. Caplinger agreed to release such personal liability in event a minimum of $11,500 was realized on the second mortgage indebtedness. Parker apparently took possession of the mill on June 14, 1965, with the consent of Bowling and the mortgagees upon the basis of such arrangements. The agreements are not set out in the record.

tion, an allegation was made that notice of the Bank's lien had been filed with the Secretary of State but no similar allegation was made with respect to the Caplinger mortgage.

We consider Caplinger's third contention to be meritorious. It is undisputed that the Bank's first mortgage constitutes a valid lien against both the real and personal property described therein. It is likewise undisputed that Caplinger's mortgage constitutes a valid lien against the real estate, which lien was acquired at the time of the recording of the mortgage on June 26, 1964, more than four months prior to bankruptcy.

Two bank officers handling the transaction, joint attorney Collier and Mr. Caplinger each testified that an oral agreement was entered into between the Bank and Caplinger in connection with the joint foreclosure to the effect that the proceeds of the sale of the personal property would first be applied on the Bank's mortgage with the deficiency, if any, to be paid out of the real estate.

The Bank officers testified that it was in accordance with their custom to resort to personal property first toward the satisfaction of claims due them. Such evidence, although oral, was not controverted. The referee made no credibility finding. He disposes of the issue by saying that the real estate and personalty were not in fact sold separately and that any arrangement of the kind claimed would not be binding upon the Trustee since he was not a party to the action.

█ The claimed oral agreement and custom is in accord with the general equitable principles upon which marshaling of assets is based. In Bank of Bentonville v. Swift & Co., 233 Ark. 808, 348 S.W.2d 881, 882, the court states:

"The marshaling of assets is a proceeding peculiarly within the jurisdiction of the chancery courts.

"In 35 Am.Jur. p. 384, it is said: 'Among the various precepts which govern the action of equity courts is the principle of marshaling, in accordance with which assets and securities of a debtor are resorted to or apportioned in such a manner as to secure protection to the rights of each of two or more creditors, or of a creditor and *some person other than a creditor having an interest in such assets and securities.'* [Emphasis supplied.]"

In Meyer v. United States, 375 U.S. 233, 236, 84 S.Ct. 318, 321, 11 L.Ed.2d 293, the Supreme Court reaffirms its holding in Sowell v. Federal Reserve Bank, 268 U.S. 449, 45 S.Ct. 528, 69 L.Ed. 1041, to the effect, "the equitable doctrine of marshalling [sic] rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds."

█ A bankruptcy court can invoke the doctrine of marshaling of assets since it applies equitable principles. Robert Moody & Son v. Century Savings Bank, 239 U.S. 374, 36 S.Ct. 111, 60 L.Ed. 336; Victor Gruen Associates, Inc. v. Glass, 9 Cir., 338 F.2d 826, 829; Textile Banking Co. v. Widener, 4 Cir., 265 F.2d 446, 450.

█ The Trustee rightly contends that the "strong-arm" clause of the Bankruptcy Act, § 70c (11 U.S.C.A. § 110), gives him a lien on all property of the bankrupt. He then urges that Caplinger had no lien on the personal property valid against the Trustee by reason of his failure to comply with the Arkansas U.C.C. We agree with such contentions The Trustee in his brief then states:

"Since appellant failed to perfect its lien with appropriate filing, it has no lien on the personal property. The receipt of the $11,500.00 by appellant would be set aside as a preference. Here, however, appellant has a valid lien on the real property of the bankrupt. This additional fact does not change the result. It only necessitates applying the doctrine of marshalling assets, before setting aside the transfer of the $11,500.00 as a preference."

We agree that the disposition of this appeal hangs upon the application of the marshaling-of-assets doctrine to the facts of the case, but disagree with the conclusion reached by the referee, affirmed by the trial court, that the superior equities lie with the Trustee.

■ Caplinger, as heretofore noted, held a valid purchase money mortgage lien on the real estate effective from the date of its recording on June 26, 1964. Such mortgage on the real estate is subject only to the prior lien of the Bank. The institution of the bankruptcy proceedings in no way affects the validity of such real estate lien or the priority thereof over any lien of the Trustee upon the real estate. The referee failed to give any recognition to the undisputed fact that Caplinger's lien upon the real estate was superior to any lien or interest of the Trustee in such real estate. The only reason assigned by the referee is a conclusory statement that Caplinger, by reason of having received a preference came into court with unclean hands and hence is not in a position to invoke the equitable doctrine of marshaling assets. The Trustee does not support the unclean hands basis of decision in his brief. We hold that there is nothing in Caplinger's conduct to bring the unclean hands doctrine into play. See 27 Am.Jur.2d Equity § 138.

■ There is no claim or proof that the foreclosure action was fraudulent or that Caplinger was guilty of any inequitable or unconscionable conduct. Caplinger's attempt to assert a lien on the personal property in the pre-bankruptcy foreclosure does not constitute wrongful or inequitable conduct. Section 60 of the Bankruptcy Act is designed to give all creditors fair treatment. No moral judgment is expressed that an attempt to assert a lien within four months of bankruptcy is a wrongful act. When a claim for a lien is asserted, there is no way the claimant can tell whether bankruptcy proceedings will be instituted within four months. If bankruptcy is not commenced within such time, Caplinger would be a diligent creditor who had protected his rights. No reason appears why a creditor should lose a right to equitable relief in punishment for being diligent in asserting his rights.

The commencement of the joint foreclosure by the Bank on its lien on the real and personal property and by Caplinger on the real estate, all of which liens were admittedly prior to the Trustee's lien, and were supported by a valid present consideration at the time of their inception in addition to being perfected in the manner prescribed by law more than four months prior to bankruptcy, and the foreclosure sale and distribution thereof in no way violate any provision of the Bankruptcy Act. See Straton v. New, 283 U.S. 318, 326, footnote 6, 51 S.Ct. 465, 75 L.Ed. 1060; Ft. Dearborn Trust & Savings Bank v. Smalley, 8 Cir., 298 F. 45, 52; 9 Am.Jur.2d Bankruptcy § 295.

We find nothing in the Bankruptcy Act which gives a trustee a preference over secured creditors having liens in existence more than four months prior to the bankruptcy in marshaling of assets. The Trustee has pointed to no authority giving him such preference. We believe that the marshaling of assets in the present situation should turn on general equitable considerations.

In our present case, the mortgaged real estate and personal property were sold in the state foreclosure proceedings at public auction in accordance with state law for approximately $64,000. No one challenges the fairness of the sale or the price brought. The real and personal property were sold together as an operating unit and thus doubtless brought more than would have been realized if the real estate and the items of personal property had been sold separately. Several witnesses testified on the separate value of the real and personal property and the parties are in agreement that the personal property represents about two-thirds and the real estate about one-third of the value of the combined property.

Thus, the value of the real estate was approximately $21,000 and the personal property $42,000. Upon application of the marshaling-of-assets formula as stated in *Meyer*, supra, to the parties plaintiff in the state proceeding, the Bank having two funds to satisfy its demand could not by the application of such funds to its demand defeat the claim of Caplinger, who had security resort to only one fund, the real estate. The application of this principle would result in applying the value of the proceeds of the personal property on the Bank's claim and then resorting to the real estate for the deficiency. Such application of the proceeds of the funds, after the satisfaction of the Bank's claims, left $11,500 of the proceeds of the real estate or slightly more than one-half the value of the real estate, to apply upon Caplinger's mortgage on the real estate, and such amount has been paid to Caplinger and is the fund here in dispute.

The fact that the real estate and personal property were sold together does not defeat the right to marshal assets. The lump sale in *Moody*, supra, of all of the real estate including the homestead, did not prevent the marshaling of assets for the purpose of determining the distribution of the proceeds. Under the undisputed evidence, all parties to the foreclosure agreed that the Bank would first exhaust its lien against the personal property. Distribution of the proceeds was properly made on the basis of such agreement, which fully conforms to the marshaling-of-assets doctrine. Equity regards the substance and intent rather than the form. See 27 Am.Jur.2d Equity § 127.

No cases have been called to our attention or found which would support giving the bankruptcy Trustee's lien, based upon the strong-arm and voidable preference provisions of the Bankruptcy Act, a superior equitable position over Caplinger's valid pre-existing lien on the real estate under the circumstances of this case.

The Trustee's contention that the doctrine of marshaling of assets will not be put in effect to the prejudice of one having double security is not a complete or accurate statement of the applicable law. The proper statement of the rule is that found in *Meyer*, supra. It is true that marshaling cannot be compelled as to creditors holding prior liens on two properties if such marshaling cannot be done without prejudice to the senior lien holders. See *Victor Gruen Associates*, supra.

In our present case, the Bank as senior lien holder to both the real and personal property has consistently agreed to resort first to the personal property to satisfy its claim. Neither the Trustee nor Caplinger held senior liens as to both properties. The lien of the Trustee was superior on the personal property, while Caplinger held the prior lien on the real estate.

Caplinger is entitled to retain the proceeds he received from the foreclosure sale.

The judgment is reversed.