**In the Matter of Franklin Thomas McELWANEY, Debtor.**

**FEDERAL LAND BANK OF COLUMBIA, Plaintiff,**

v.

**J. Coleman TIDWELL, as Trustee for Franklin Thomas McElwaney, and The Farmers Home Administration of the United States Department of Agriculture, Defendants.**

**Bankruptcy No. 83–50128–Mac.
Adv. No. 83–5226.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

May 3, 1984.

Beverly B. Martin, Martin, Snow, Grant & Napier, Macon, Ga., for Federal Land Bank of Columbia.

Thomas W. Talbot, Talbot & Ladson, Macon, Ga., for J. Coleman Tidwell, as Trustee for Franklin Thomas McElwaney.

Lillian H. Lockary, Asst. U.S. Atty., Macon, Ga., for Farmers Home Administration of the United States Department of Agriculture.

### MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

### STATEMENT OF THE CASE

Franklin Thomas McElwaney, d/b/a Turnwold Farms, Debtor, filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on February 3, 1983. On September 23, 1983, the Federal Land Bank of Columbia, Plaintiff (hereinafter Federal Land Bank), filed a "Complaint to Determine Validity, Priority, or Extent of Lien." The complaint requests that the Federal Land Bank be allowed to apply Debtor's stock in the Federal Land Bank against the Federal Land

Bank's claim. Named as defendants in the complaint are J. Coleman Tidwell, trustee (hereinafter Trustee), and the Farmers Home Administration of the United States Department of Agriculture (hereinafter FmHA). On October 24, 1983, the FmHA filed a cross-claim against the Trustee. On November 21, 1983, the parties filed a stipulation of facts, and on December 8, 1983, the FmHA moved for summary judgment. On December 12, 1983, the Court entered a consent order on FmHA's cross-claim.[1] On December 15, 1983, the Federal Land Bank moved for summary judgment.

After considering the motions for summary judgment and the briefs of counsel, the Court has this day entered an order granting the summary judgment motions of the FmHA and the Federal Land Bank. In support of its order, the Court publishes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The facts of this adversary proceeding are established by the pleadings and stipulations of the parties. On October 4, 1977, Debtor purchased approximately 475 acres of farmland in Putnam County, Georgia. When Debtor purchased the farmland, Debtor assumed an obligation with the Federal Land Bank that is secured by a first lien on the farmland. The farmland is worth more than the debt owed to the Federal Land Bank. In assuming the obligation, Debtor was required to purchase stock in the Federal Land Bank,[2] which stock presently is valued at $11,780.00. The parties stipulate that the Federal Land Bank has a lien on the stock, and that the FmHA has no lien on the stock.

The Putnam County farmland is encumbered by a second lien in favor of the FmHA. It is undisputed that the Federal Land Bank's claim is fully secured, and that the claim of the FmHA is only partially secured.

## CONCLUSIONS OF LAW

The issue presented to the Court in this adversary proceeding is whether the Federal Land Bank stock issued to Debtor can be applied by the Federal Land Bank against the Federal Land Bank's claim even though the claim is fully secured by the farmland. The Federal Land Bank argues that the Court should order the Federal Land Bank stock abandoned[3] so that the Federal Land Bank can dispose of the stock and use the proceeds to reduce the Federal Land Bank's claim. The Federal Land Bank argues that it may then look to the farmland to satisfy the balance of its claim. The FmHA concurs in the request of the Federal Land Bank to first apply the stock against the Federal Land Bank's claim. The Trustee argues that after the Federal Land Bank satisfies its claim from the farmland, the FmHA will be entitled to the remaining proceeds from the farmland, and the Trustee will be entitled to the stock for the benefit of Debtor's unsecured creditors.

The stock of the Federal Land Bank is issued under The Farm Credit Act of 1971, 12 U.S.C.A. § 2001–2260 (West 1980 & Supp.1984). 12 U.S.C.A. § 2034 (West 1980 & Supp.1984) provides:

The shares of stock in each Federal land bank association shall have a par value of $5 each. No person but borrowers from the bank shall become members and stockholders of the association. If an application for membership is approved and if the applied-for loan is granted, the member of the association shall subscribe to stock in the association in an amount not less than 5 per centum nor more than 10 per centum of the face amount of the loan as determined by the bank. Stock shall be paid for in cash by

---

1. The consent order provided for the abandonment of $3,581.00 in milk proceeds upon which the FmHA held a lien.

2. 12 U.S.C.A. § 2034 (West 1980 & Supp.1984).

3. 11 U.S.C.A. § 554(b) (West 1979) provides: "On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate."

the time the loan is closed. The association shall then purchase a similar amount of stock in the land bank. Stock shall be retired and paid at book value not to exceed par, as determined by the association, upon the full repayment of the loan and if the loan is in default may be canceled for application on the loan, or under other circumstances, for other disposition, when approved by the bank. The aggregate capital stock of each association shall be increased from time to time as necessary to permit the securing of requested loans from the bank for the association's members.

12 U.S.C.A. § 2034 (West 1980 & Supp. 1984) provides that a Federal land bank issuing shares under section 2034(a) shall have a first lien on the stock.

Several courts have addressed the disposition of stock issued by a Federal land bank. In *Cooperativa Cafeteros De Puerto Rico*, 19 B.R. 732 (Bkrtcy.D.P.R.1982), a Bankruptcy Act case, the bankrupt held stock issued under The Farm Credit Act of 1971. The trustee liquidated certain assets of the bankruptcy estate, and with the proceeds, the trustee paid the bankrupt's debt to the Federal land bank that issued the stock. The bank then agreed to give the trustee credit for the bankrupt's stockholdings, but the bank and the trustee could not agree on the amount of the credit.

The court first noted that Congress restricted redemption and transferability of the stock to provide stable membership and capital to the Federal land bank issuing the stock. The court stated:

> We read the statute as granting the bank the option to retire, (i.e., redeem) the stock of the bankrupt; the bankrupt, and thus the trustee has no right to demand that the stock be retired—that right, under the statute, does not mature

and is not exercisable, except at the bank's option.

*Id.* at 734. The court then held that the trustee was entitled to a credit equal to the fair market value of the stock, reduced to its present value.

Also, in *In re Farmers Federation Cooperative, Inc.*, 243 F.Supp. 650 (W.D.N.C. 1965), *vacated*, 368 F.2d 934 (4th Cir.1966), *cert. denied*, 386 U.S. 992, 87 S.Ct. 1308, 18 L.Ed.2d 338 (1967), the bankrupt held stock issued under The Farm Credit Act of 1933.[4] The issuing Federal land bank submitted a proof of claim, and the Referee in Bankruptcy allowed the claim after crediting the par value of the stock against it. The bank appealed the bankruptcy court's decision, and the district court affirmed the bankruptcy court. The district court held that the Federal land bank should exercise its discretion to redeem the stock and apply it to reduce its indebtedness prior to looking to any real estate upon which the bank held a lien. The district court stated:

> The Bank, by its mortgages and deeds of trust on various property of Federation, and its first lien on the stock and allocated surplus, was, in effect, twice secured for the same debt. Undoubtedly Bank would have asserted its lien against the stock and allocated surplus had its mortgages and deeds of trust proved of little or no value. As a matter of equity, this should work both ways. The value of the stock and allocated surplus should be credited against Bank's claim since it could have proceeded against that security in satisfaction of its claim.

> The Bank is authorized by statute to retire and cancel stock owned by a borrower in partial or total liquidation of the debt where the borrower is in default, dissolution, or liquidation....

---

4. Under that Act, the lender was granted a first lien on the stock. Law of June 16, 1933, ch. 98, § 42, 48 Stat. 264 as amended (formerly codified at 12 U.S.C.A. § 1134d(c)) (repealed 1971). The Act also provided:

> In any case where a debt of a borrower is in default, the bank may, in accordance with

regulations of the Farm Credit Administration, retire and cancel all or part of the stock of the defaulting borrower at the fair book value thereof, not exceeding par, in total or partial liquidation of the debt ....

*Id.*

Under the circumstances of this case, the Bank should not refuse to do what it has authority to do when equity and justice demand it. The Bank did not see fit to disclose to the referee its reason, if any, for refusing to credit the stock against the debt, other than its bare conclusion that other borrowing cooperatives would be injured. This is not what is meant by the exercise of discretion. If the credit is *not* allowed, the resulting pecuniary injury to other creditors of Federation is readily apparent. If credit *is* allowed, there is no showing of real detriment to Bank or other cooperatives.

243 F.Supp. at 652–53 (emphasis in original).[5] It thus appears that the Federal Land Bank has a right to apply the stock to reduce Debtor's debt with it and even may be under a duty to do so if it is in the best interests of Debtor's other creditors. *See also In re Johnson,* No. 81–02856–5(A) (Bankr.E.D.N.C.1982) (trustee cannot demand turnover of a debtor's stock in The Federal Land Bank of Columbia unless the debtor's loans are repaid in full or the lenders are provided with adequate protection).

Although the Federal Land Bank wishes to apply the stock in question to reduce its claim, the Trustee argues that the Court should marshal assets so that the Federal Land Bank must satisfy its claim in full from the farmland.

Marshaling of assets is an "equitable doctrine which allows this Court, as a court of equity, to arrange assets or claims so as to secure the proper application of the assets to the various claims and to allow all parties having equities therein to receive their due proportion." *McDonald v. First National Bank (In re Harrold's Hatchery and Poultry Farms, Inc.),* 17 B.R. 712, 715, 8 Bankr.Ct.Dec. 995, 997 (Bkrtcy.M.D. Ga.1982). Marshaling "rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another cred-

itor, who may resort to only one of the funds." *Meyer v. United States,* 375 U.S. 233, 236, 84 S.Ct. 318, 320, 11 L.Ed.2d 293 (1963). *See also Harrold's Hatchery,* 17 B.R. at 716, 8 Bankr.Ct.Dec. at 997.

Before marshaling may be applied, three elements must be satisfied. The court in *United States v. Friend (In re A.E.I. Corp.),* 11 B.R. 97, 7 Bankr.Ct.Dec. 876, 4 Collier Bankr.Cas.2d 890 (Bkrtcy.E.D.Pa. 1981), stated these three elements: "1) the existence of two creditors with a common debtor; 2) the existence of two funds belonging to the debtor; 3) the legal right of one creditor to satisfy his demand from either or both of the funds, while the other may resort to only one fund." *Id.* at 99, 7 Bankr.Ct.Dec. at 877, 4 Collier Bankr. Cas.2d at 892. *See also Peoples Bank v. The Computer Room, Inc. (In re The Computer Room, Inc.),* 24 B.R. 732 (Bkrtcy.N.D.Ala.1982).

In this adversary proceeding, the Trustee seeks to invoke the doctrine of marshaling on the ground that he is a lien creditor of Debtor under section 544 (the "strong-arm" provision) of the Bankruptcy Code. That section provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the com-

---

**5.** The Fourth Circuit agreed that the trustee should be permitted to offset the stock against the bank's claim, but vacated on the basis of the amount of the offset permitted by the district court. The court of appeals found that marshaling of assets supported the offset. 368 F.2d at 939.

mencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C.A. § 544 (West 1979).

■ The strong-arm provision is designed to protect general unsecured creditors against secret, unperfected liens. *Weiman v. Stopher (In re Weiman)*, 22 B.R. 49, 9 Bankr.Ct.Dec. 455, 6 Collier Bankr.Cas.2d 1355 (Bkrtcy. 9th Cir.1982). Otherwise, the Bankruptcy Code does not vest the trustee with better rights than belonged to the debtor. *Miller v. Steward (In re Forester)*, 529 F.2d 310 (9th Cir. 1976). In the instant case, the Court notes that there are no secret liens. Rather, the Trustee is attempting to use his status under section 544 to compel the marshaling of assets for the benefit of Debtor's unsecured creditors and to the detriment of a perfected junior secured creditor of Debtor. *See Duck v. Wells Fargo Bank (In re Spectra Prism Industries, Inc.)*, 28 B.R. 397, 400, 10 Bankr.Ct.Dec. 269, 271, 8 Collier Bankr.Cas.2d 325, 328 (Bkrtcy.App.Cal. 1983) (Volinn, B.J., dissenting).

■ Marshaling is an equitable doctrine, and it should not be applied to frustrate the policies of the Bankruptcy Code. *Meyer v. United States*, 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963); *Genova v. Chavez (In re Chavez)*, 26 B.R. 129 (Bkrtcy.D.Colo. 1983). Outside bankruptcy, secured creditors hold a position superior to unsecured creditors. Under the Bankruptcy Code, the secured claims in a Chapter 7 case are recognized first. 11 U.S.C.A. § 725 (West 1979). Secured creditors are entitled to a return of their collateral or to receive through distribution the value of their collateral. 11 U.S.C.A. § 506 (West 1979). *See also* H.R. Rep. No. 595, 95th Cong., 1st Sess. 382, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 5963, 6338. The Court notes that if marshaling were allowed, the Trustee would recover the stock for Debtor's unsecured creditors, and the Federal Land Bank would be paid its secured claim in full from the proceeds of the farmland. The FmHA, however, would not receive as much as it would if the Federal Land Bank first looked to the stock to reduce its claim. The Trustee thus seeks to use marshaling to benefit unsecured creditors at the expense of the FmHA, a junior secured creditor of Debtor.[6]

In *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961), the Supreme Court held that under section 70c of the Bankruptcy Act,[7] the former strong-arm provision, the rights of the hypothetical lien creditor were to be determined at the time of the bankruptcy filing rather than at an earlier date. To hold otherwise, said the Court, would "enrich unsecured creditors at the expense of secured creditors, creating a windfall merely by reason of the happenstance of bankruptcy." *Id.* at 609, 81 S.Ct. at 350. To allow the Trustee to invoke the marshaling doctrine, by virtue of his status as a hypothetical lien creditor, would be a use of the

---

**6.** It is clear that marshaling cannot serve to harm the senior secured creditor who is entitled to resort to the two funds. *See Atlantic Nat'l Bank v. United States*, 210 Ct.Cl. 340, 536 F.2d 1354 (1976). *See also Doctrine of Marshaling Assets Where the Two Funds Governed by the*

*Paramount Lien are Subject Respectively to Subordinate Liens in Favor of Different Creditors*, 76 ALR3d 326 (1977).

**7.** Law of July 1, 1898, ch. 541, § 70c, 30 Stat. 565 as amended (repealed 1979).

strong-arm clause not contemplated · by Congress. In this Court's opinion, the Trustee's construction would frustrate the Code's policy by enriching unsecured creditors over secured creditors. *See Maryland National Bank v. Mayor of Baltimore,* 723 F.2d 1138 (4th Cir.1983).

In *Caplinger v. Patty,* 398 F.2d 471 (8th Cir.1968), a bank held a first lien on certain real estate and personal property, and Caplinger held a second lien on the same real estate. The bank and Caplinger employed an attorney to foreclose, and they agreed that the bank would first apply the proceeds from the sale of personal property to reduce its debt, and then satisfy the deficiency from the real estate. The property was sold at auction, and thereafter the corporation was adjudicated bankrupt. In a reclamation proceeding, Caplinger was ordered to turn over to the trustee his proceeds from the sale, and the district court affirmed. On appeal, the Eighth Circuit reversed.

The Eighth Circuit held that section 70c of the Bankruptcy Act granted to the trustee a lien on all the property of the bankrupt. The court also noted that Caplinger had no lien on the personal property due to his failure to perfect it. However, the court held that the trustee could not require the marshaling of assets to deprive Caplinger of his interest in the real estate. The court noted: "We find nothing in the Bankruptcy Act which gives a trustee a preference over secured creditors having liens in existence more than four months prior to the bankruptcy in marshaling of assets." *Id.* at 475. The court went on to state: "No cases have been called to our attention or found which would support giving the bankruptcy Trustee's lien, based upon the strong-arm and voidable prefer-

ence provisions of the Bankruptcy Act, a superior equitable position over Caplinger's valid preexisting lien on the real estate under the circumstances of this case." *Id.* at 476.

Likewise, in *Canal National Bank v. Larry's Equipment Service, Inc. (In re Larry's Equipment Service, Inc.),* 23 B.R. 132, 9 Bankr.Ct.Dec. 832 (Bkrtcy.D.Me. 1982), the court held:

Marshalling is not equitable if applied for the benefit of a trustee to the detriment of a secured and properly perfected junior lien creditor. To permit marshalling in the manner sought by the trustee, in this case, would frustrate the objective of the Bankruptcy Code and conflict with the doctrine itself by prejudicing the rights of a superior class of creditors.

*Id.* at 134, 9 Bankr.Ct.Dec. at 832. Other courts also have held that the trustee may not benefit himself from the marshaling doctrine.[8] *Peoples Bank v. The Computer Room, Inc. (In re The Computer Room, Inc.),* 24 B.R. 732 (Bkrtcy.N.D.Ala.1982). *See also Miller v. Steward (In re Forester),* 529 F.2d 310 (9th Cir.1976); *Stuhley v. United States (In re United Medical Research, Inc.),* 12 B.R. 941 (Bkrtcy.C.D.Cal. 1981).[9]

The Court has considered those cases that support the Trustee's argument. In *Berman v. Green (In re Jack Green's Fashions for Men—Big and Tall, Inc.),* 597 F.2d 130 (8th Cir.1979), the court held that since the unsecured creditors of a corporate bankrupt would receive no dividend if the bank were allowed to exhaust the business assets of the corporation without first looking to the real estate pledged by the shareholders of the corporation, the

---

**8.** In *McDonald v. First Nat'l Bank (In re Harrold's Hatchery and Poultry Farms, Inc.),* 17 B.R. 712, 8 Bankr.Ct.Dec. 995 (Bkrtcy.M.D.Ga.1982), the trustee requested marshaling. The Court did not reach the propriety of the trustee's request since marshaling was denied on other grounds.

**9.** The Court also notes the article, Leibowitz, *Marshaling of Assets Under Bankruptcy Code,*

189 N.Y.L.J. p. 1, col. 1 (June 16, 1983), in which the author states:

Marshaling of assets is a time honored equitable doctrine that should not be expanded to protect the interests of unsecured creditors.... A trustee, as a hypothetical junior lien creditor under Section 544(a)(1) of the Bankruptcy Code, should not be permitted to obtain any interest in secured property under the marshaling doctrine.

trustee was entitled to have the assets marshaled so that the bank must proceed against the real estate first.[10] In *Berman,* however, it was unclear whether the marshaling by the trustee would harm a secured creditor.

Also, in *Duck v. Wells Fargo Bank (In re Spectra Prism Industries, Inc.),* 28 B.R. 397, 10 Bankr.Ct.Dec. 269, 8 Collier Bankr. Cas.2d 325 (Bkrtcy. 9th Cir.1983), the appellate panel held that a trustee is given the status of a lien creditor to protect assets and that, as such a lien creditor, the trustee had standing to block the marshaling of assets. The *Spectra Prism* case does not address the issue of whether the trustee can assert the marshaling doctrine as a hypothetical lien creditor, but only that he can block it. In the *Spectra Prism* case, Judge Volinn dissented and argued that the trustee should not be benefited by the marshaling doctrine.

To the extent that *Berman* and *Spectra Prism* suggest that the Trustee could employ the marshaling doctrine to his benefit and to the detriment of a junior secured creditor, this Court is persuaded that the cases holding to the contrary are the better reasoned. Section 544 was intended to protect the estate from secret, unperfected liens, and it was not intended to benefit the Trustee over a perfected junior secured creditor. Because the marshaling, as the Trustee requests, would harm the FmHA's position, the Trustee's request for marshaling must be denied.

Because there is no genuine issue of material fact, and the FmHA and the Federal Land Bank have demonstrated that they are entitled to judgment as a matter of law, the Court will grant their motions for summary judgment. R.Bankr.P. 7056.

The Court will order the Federal Land Bank stock abandoned so that the Federal Land Bank may apply the stock against its claim.

An order in accordance with this opinion is attached hereto.

---

10. Most courts have held that marshaling would be denied in the *Berman* situation because to marshal assets, the two funds must belong to a common debtor and, unless the corporate veil is pierced, the corporate assets and personal assets are separately and distinguishably owned. *McDonald v. First Nat'l Bank (In re Harrold's Hatchery and Poultry Farms, Inc.),* 17 B.R. 712, 8 Bankr.Ct.Dec. 995 (Bkrtcy.M.D.Ga.1982); *Whirlpool Corp. v. Plad, Inc. (In re Plad, Inc.),* 24 B.R. 676 (Bkrtcy.M.D.Tenn.1982); *United States v.* *Friend (In re A.E.I. Corp.),* 11 B.R. 97, 7 Bankr. Ct.Dec. 876, 4 Collier Bankr.Cas.2d 890 (Bkrtcy. E.D.Pa.1981); *Farmers & Merchants Bank v. Gibson,* 7 B.R. 437 (Bkrtcy.N.D.Fla.1980). The decision in *Berman* was criticized by several courts. *See Peoples Bank v. The Computer Room, Inc. (In re The Computer Room, Inc.),* 24 B.R. 732 (Bkrtcy.N.D.Ala.1982); *Stuhley v. United States (In re United Medical Research, Inc.),* 12 B.R. 941 (Bkrtcy.C.D.Cal.1981).