### In re CORSO STEIN ENTERPRISES, INC., Debtor.

**Bankruptcy No. 86–03341.**

United States Bankruptcy Court, D. New Jersey.

Nov. 2, 1987.

Richard Shaine, Stark and Stark, for trustee.

William Wolfson, Wolfson and Knee, for Official Unsecured Creditors Committee.

Helen Davis Chaitman, Ross and Hardies, and Frederick Dennehy, Wilentz, Goldman and Spitzer, for Amboy–Madison Bank and GS Realty Corp.

Laurie Rush–Masuret, John J. Rush, P.A., for First Indem. of America Ins. Co.

Marianne McKenzie, Greenbaum, Rowe, Smith, Ravin, Davis and Bergstein for Whispering Pines Homeowners Ass'n.

W. Cary Edwards, Atty. Gen., Susan Doppelt–LaPoff, Deputy Atty. Gen., Trenton, N.J., for State of N.J., Dept. of Community Affairs.

Barry Frost, Teich, Groh and Frost, Trenton, N.J., for contract purchasers.

Dale W. Baker, New Brunswick, N.J., for debtor.

WILLIAM H. GINDIN, Bankruptcy Judge.

This matter arises as a result of a motion made by Amboy–Madison National Bank (Bank) to authorize the bank to honor a draw under a letter of credit issued to First Indemnity of America Insurance Company (F.I.A.) for the amount which F.I.A. has paid to former contract purchasers of the debtor. The trustee responds by seeking an order directing that F.I.A. marshal assets and proceed against individual indemnitors.

## FACTS

The debtor was engaged in the construction of housing units in a planned unit development, which units were sold to the general public prior to their completion. Purchasers placed deposits with the debtor prior to such completion and the debtor used the funds so received. In order to protect the purchasers, the debtor obtained a bond from F.I.A. F.I.A. required that it be supplied a letter of credit in an amount equal to the amount of the deposits so that any losses it sustained could be reimbursed. In addition to the letter of credit, F.I.A. took an indemnification from John and Nadia Corso. Mr. Corso is one of the principals of the debtor and Mrs. Corso is his wife.

The bank issued the letter of credit based upon the debtor's certificate of deposit placed with the bank in an amount necessary to cover the letter of credit. The bank in turn took a guarantee signed by John Corso and David Stein, principals of the debtor.

The debtor has defaulted on its various contracts and, as a result of such a default, F.I.A., after a hearing and order of this court, has honored its obligation to the individual contract purchasers. It now seeks to exercise its rights under the letter of credit. If the bank permits or is authorized to permit the honoring of such a letter of credit, it will then have a setoff against the certificate of deposit and the debtor will ultimately have paid the money. If, on the other hand, either F.I.A. or the bank can be compelled to seek recovery under an appropriate indemnity agreement or guarantee, the certificate of deposit will remain the property of the debtor and inure to the benefit of the creditors.

A diagram may be helpful.

DEBTOR    CERTIFICATE OF    BANK    LETTER OF    F.I.A.
          DEPOSIT                   CREDIT

                          Guarantee              Indemnity

          DAVID STEIN            JOHN CORSO
          JOHN CORSO            NADIA CORSO

In order to accomplish recovery for the creditors, the trustee seeks to invoke the common law equitable doctrine of marshaling.

## DISCUSSION

While not labeled, marshaling was first recognized in the case of *Culpepper contra Aston*, 2 Chan.Cas. 116, 22 English Reports—Full reprint 873 (1682). In that case, a decedent left his daughter a legacy to be paid specifically from personal property. The balance was to be paid to his son. In addition, the son was to receive certain real estate. The decedent directed the payment of debts from the real estate, but prior to his death, transferred the real estate to pay some of the debts (as in a deed in lieu of foreclosure). The court allowed the son to retain the balance of the land after satisfaction of that debt. In the meanwhile, the trustee had used the personal property to pay debts, thereby defeating the legacy. The chancellor held that the residue of the lands should be charged with the legacy, thus directing the employment of the funds, both of which were the property of the son, equitably.

The doctrine was more clearly defined in *La Noy against The Duchess of Athol*, 2 Atk 44, 88 English Reports—Full reprint 532 (Ch. 1742). There, the court prevented creditor who had a choice of going against real estate or personal estate from going against the real estate, which was the only fund from which another creditor could hope to receive an annual income owed by the estate of a deceased debtor. 88 English Reports—Full reprint 535.

Similarly, Lord Chancellor Eldon in *Ex Parte Kendall*, 17 Ves.Jun. 514, 34 English Reports—Full reprint 199 (Ch. 1811) used the doctrine to require creditors of a partnership to first go against all of the members of the partnership so as to preserve assets for the benefit of creditors who were owed funds by fewer than all of the partners.

In *Sowell v. Federal Reserve Bank*, 268 U.S. 449, 456–457, 45 S.Ct. 528, 530–531, 69 L.Ed. 1041, 1049 (1925), the court summarized the doctrine and identified it as:

> The equitable doctrine of marshaling rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds.

268 U.S. 456–457, 45 S.Ct. 530. The doctrine is "designed to promote fair dealing and justice". *Meyer v. United States*, 375 U.S. 233, 237, 84 S.Ct. 318, 321, 11 L.Ed.2d 293, 297 (1963).

The basic principle that the bankruptcy courts are courts of equity, has been unchallenged. "[C]ourts of bankruptcy are essentially courts of equity and their proceedings are inherently proceedings in equity". *Local Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230, 1233, (1934). This court is directed to apply "the principles and rules of equity jurisprudence". *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281, 287 (1939). The Bankruptcy Code, 11 U.S.

C. § 105, codifies the general powers of the bankruptcy court and such powers require this court to determine whether or not to invoke the doctrine of marshaling to compel F.I.A. to proceed against its individual indemnitors or the bank to proceed against its guarantors.

Recent case law involving the doctrine of marshaling is sparse, for the courts have hesitated to place a creditor under restrictions not contemplated by the creditor when it entered into its initial arrangement. Thus in New Jersey, the Chancery Division in *Johnson v. Lentini,* 66 N.J.Super. 398, 169 A.2d 208 (Ch.Div.1961) declined to direct the marshaling of assets at the behest of the debtor. There the court held that "the doctrine of marshaling is only applicable as between creditors". 66 N.J.Super. 409, 169 A.2d 208. Furthermore, that case set forth the proposition that the creditor must have two liens, a situation not present in the instant case.

Similarly, a creditor bank held liens upon life insurance policies, a certificate of deposit and a second mortgage in *Matter of Multiple Services Industries, Inc.,* 18 B.R. 635 (Bankr.E.D.Wis.1982). There the court required the bank to foreclose a second mortgage even as against the bank's argument that no one contemplated such a result, that the bank would be delayed, and that the bank would run the risk that its claim would not be satisfied. In directing foreclosure, the court required that the trustee maintain funds sufficient to pay the claim of the bank in the event the foreclosure did not yield sufficient money. Given that posture, the doctrine directs the court to arrange assets and claims in such a way as to allow all parties to receive payment in their just proportion. *Matter of McElwaney,* 40 B.R. 66 (Bankr.M.D.Ga. 1984).

The doctrine of marshaling has been referred to as the "two funds" doctrine. *In re The Computer Room, Inc.,* 24 B.R. 732 (Bankr.N.D.Ala.1982). In analyzing the history of the marshaling doctrine in that case, Judge Wright emphasized that in order to invoke the doctrine it was necessary to have three basic elements. The two

creditors must be of the same debtor, the debtor must have two funds, and one of the creditors alone may have the right to resort to both funds. This outline is derived as well from *In re Beacon Distributors, Inc.,* 441 F.2d. 547 (1st Cir.1971). *Beacon Distributors,* however, sounds a note of caution, for in that case Judge McEntee required that the invocation of the doctrine be preceeded by a finding that such a treatment would necessarily be just and equitable. See also *Caplinger v. Patty,* 398 F.2d 471 (8th Cir.1968).

The trustee urges that this court apply general equitable principles and go beyond a more rigid interpretation of the early doctrine. A few cases have gone beyond a simple approach and allowed marshaling in more complex situations. In *In re Tampa Chain Co., Inc.,* 53 B.R. 772 (Bankr.S.D.N.Y.1985) Judge Buschman found that there was a common debtor, in the sense that a corporate debtor and the guaranteeing shareholders were to be treated as one and the same. In reaching that conclusion, however, the court made a specific finding of fraud and inequitable conduct, for he found "the elements of inequitable conduct and fraud justifying disregard of the corporate veil or requiring equitable subordination are clearly present". 53 B.R. 779.

The court has also permitted a piercing of the corporate veil where creditors relied to their detriment upon the actions of the guarantors. *Farmers & Merchants Bank v. Gibson,* 7 B.R. 437 (Bankr.N.D.Fla.1980). The court there found it would be inequitable to allow the guarantors to hide behind the corporation where the individually owned property was specifically pledged to secure a guarantee and the loan itself had been used to obtain working capital. In addition, the individuals were makers rather than guarantors on part of the obligation. In that case, the court took into account the rights of the creditor which might be endangered by delay and allowed the bank to proceed against the corporate property holding out a certain amount of it and granting the trustee equitable subrogation. In the instant case, the indemnitors guaranteed only a specific obligation. In *Farmers & Merchants,* the court specifi-

cally determined that the guarantee was a contribution to capital and served as an inducement of others to innocently commence or continue to extend supplies or services to the principal on credit. 7 B.R. 441.

More troubling is the chief case relied upon by the trustee, *In re Jack Green's Fashions for Men—Big and Tall, Inc.*, 597 F.2d 130 (8th Cir.1979). The court simply relied on equitable principles and extended the doctrine of marshaling. No specific finding of fraud was made and the court did not argue that it was piercing the corporate veil. No other cases have gone as far as the Eighth Circuit in *Jack Green's*. Judge Wright in *In re The Computer Room, supra,* rejected the case as being inconsistent with the historical background of the doctrine. Judge Elliott in *In re United Medical Research, Inc.,* 12 B.R. 941 (Bankr.C.D.Cal.1981) likewise considered *Jack Green's* to be an anomalous result.

In the absence of some law pursuant to which this court has authority to pierce the corporate veil, this court must also reject the *Jack Green's* reasoning as having no support in history or in law. The burden of proof for one seeking to go beyond the corporation is a heavy one. There must be some basis upon which the court relies.

The circumstances under which the court should disregard the corporate fiction are not always clear and it is difficult, if not impossible, to formulate a precise and categorical definition applicable to all situations, ... each case being *sui generis.* The burden, however, in each case rests upon the plaintiff to establish that there is a basis which serves for disregard of the corporate form....

*Brunswick Corp. v. Waxman,* 459 F.Supp. 1222, 1229 (D.N.Y.1978), aff'd., 599 F.2d 34 (2d Cir.1979). In the instant case no such facts are alleged.

In analyzing the case before this court, one must go back to the diagram set forth above. In the case of F.I.A. there is a claim against a letter of credit and a claim against the Corsos. The debtor does not have any interest in either fund. Thus the common fund or two fund doctrine simply does not apply. With respect to the bank (not directly involved in this motion, but clearly presenting an issue which will arise shortly) the debtor has a claim to the residual of the certificate of deposit, but the two funds are simply not owned by the same debtor. In order to reach Mr. Corso and Mr. Stein, one must find some justification for piercing the corporate veil. None has been suggested.

Finally, the courts have taken into account the question of prejudice to the secured creditor. *Matter of Dealer Support Services International,* 73 B.R. 763, 15 BCD 1274 (Bankr.E.D.Mich., So.Div., 1987). Judge Brody pointed out that the delay to the creditor occasioned by compelling the secured creditor to proceed on the guarantee would force the secured creditor to "suffer the inherent delays and expense of a foreclosure proceeding ... [which] ... clearly prejudice the bank" 73 B.R. 766, 15 BCD 1276. The position of Nadia Corso, not a principal of the corporation, would likewise suffer prejudice. No adjudication of her position has yet been made and a determination which immediately fixes her rights would be inherently unfair.

This court, therefore, finds that the prerequisites for the invocation of the doctrine of marshaling have not been met. The motion by F.I.A. to permit it to charge the letter of credit is granted and the position of the trustee is rejected.

The attorney for F.I.A. shall submit an order in accordance with this opinion.